CINCINNATI INSURANCE COMPANY, Appellant,

v.

JARVIS, Appellee.

[Cite as *Cincinnati Ins. Co. v. Jarvis* (1994), 98 Ohio App.3d 155.]

Court of Appeals of Ohio,
Huron County.

No. H–94–3.

Decided Oct. 21, 1994.

*Paul D. Eklund* and *Dennis R. Fogarty,* for appellant.

*Eugene P. Weiss,* for appellee.

---

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Huron County Court of Common Pleas in which summary judgment was granted in favor of the defendant-appellee Anna B. Jarvis on plaintiff-appellant Cincinnati Insurance Company's complaint for declaratory judgment on the issue of the availability of underinsured motorist coverage.

Appellant sets forth the following assignments of error:

"Assignment of error no. 1

"The trial court erred in holding that the insured's failure to protect the insurer's subrogation rights did not breach the insurance contract and abrogate the underinsured motorist coverage claim.

"Assignment of error no. 2

"The trial court erred in holding that the insured presented a valid underinsured motorist coverage claim under her own policy based upon the death of her emancipated adult daughter."

The undisputed facts that are relevant to the issues raised on appeal were presented to the court through the stipulations of the parties and the affidavit of appellee Anna Jarvis and are as follows.

On September 3, 1990, Lydia K. Gordon, the emancipated adult daughter of appellee Anna Jarvis, was killed in an automobile accident that was caused by the negligence of Jeffrey Ushry who was driving the other vehicle that was involved in the collision. At the time of the accident Ushry was insured by Allstate Insurance Company under a policy which included liability coverage limits of $50,000 and Jarvis was insured by appellant Cincinnati Insurance Company under a policy which included uninsured/underinsured motorist coverage limits of $100,000. During the then current coverage period, Lydia did not live with Jarvis and was not an insured under the Cincinnati policy. As executor of her estate, Lydia's husband, James Gordon, made a claim against Ushry's insurer, Allstate. On January 25, 1991, Jarvis, as a wrongful death claimant under R.C. 2125.02, made a claim against her own underinsured motorist carrier, Cincinnati Insurance Company. On April 23, 1991, James Gordon entered into a settlement with Allstate on behalf of Lydia's estate and executed a "Release of All Claims" to release Ushry from any further claims by the estate. Thereafter, Cincinnati refused to honor Jarvis' underinsured motorist claim and, on January 7, 1993, filed this declaratory judgment action for a judicial determination as to the validity of Jarvis' claim.

On August 4, 1993, both appellee and appellant filed motions for summary judgment. Appellant argued in its motion that (1) appellee failed to protect its subrogation rights and thereby gave up her right to recover under the uninsured/underinsured provisions of the policy; (2) appellee is not "legally entitled to recover" from Ushry because her claim must be brought by the estate and the estate has already settled its claim against Ushry; and (3) appellee's claim is too remote from the intent of the legislature in its enactment of R.C. 3937.18.

Appellee argued in her motion for summary judgment that the executor brought the action against the tortfeasor on behalf of Lydia's estate; that she did not receive any of the $50,000 settlement that the executor received; and that she

did not consent to the settlement or act in any other way to jeopardize appellant's subrogation rights.

The trial court found in its judgment entry that appellee never entered into a settlement with the tortfeasor; appellee was never in a position to dictate or control the settlement; the stipulated facts indicate that appellant was put on notice of the wrongful death claim in January 1991, and the executor's settlement with the tortfeasor was not concluded until April 1991; and appellee did not receive any of the proceeds from the executor's settlement with the tortfeasor. The judge concluded that appellee had put appellant "on notice of her claim * * * well in advance of the time the matter was settled by the executor * * * which would have allowed (appellant) sufficient time to protect any subrogation rights to the extent possible." The court denied appellant's motion and granted summary judgment in favor of appellee. On February 28, 1994, appellant filed its notice of appeal.

## I

This court will first examine appellant's second assignment of error in which it argues that appellee's claim for uninsured/underinsured motorist coverage for the wrongful death of her emancipated adult daughter who was not a covered person under the policy is too remote from the intent of R.C. 3937.18 to require coverage in this case.

Appellee responds that (1) her policy provides for recovery by a covered person who would be legally entitled to recover from an uninsured/underinsured motorist because of bodily injury caused by an accident; (2) under R.C. 2125.02, she is presumed to have suffered damages as a result of the wrongful death of her child; (3) her daughter's death was caused by the misconduct of an uninsured/underinsured motorist; and (4) she may therefore recover such damages from her insurance carrier, up to the liability limit of the policy. She argues further that the fact that her daughter was neither an insured under her policy nor a resident of her household does not preclude this recovery and that any language in the uninsured/underinsured motorist coverage which attempts to restrict such coverage is contrary to the clear mandate of R.C. 3937.18 and is void.

The relevant portion of the Cincinnati policy states:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle. We will pay under this coverage only after the limits of liability

under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

" * * *

" 'Uninsured Motor Vehicle' means a land motor vehicle or trailer of any type:

" * * *

"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case, its limit for bodily injury liability must be less than the limit of liability for this coverage."

R.C. 3937.18(A) provides

"(A) No automobile liability * * * policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered * * * unless both of the following are provided:

" * * *

"(2) Underinsured motorist coverage, which * * * shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident * * *."

The issue under this assignment of error is: Does R.C. 3937.18(A) require that appellee's claim be covered by the uninsured/underinsured motorist provision of her Cincinnati Insurance Company policy?

To effectively discuss the issues raised by this assignment of error it is necessary to review the law as established by cases involving similar factual situations.

In *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, the Supreme Court of Ohio considered a uninsured/underinsured motorist claim by a father for the wrongful death of his nonresident daughter. At issue in the case was a policy provision which limited recovery to accidents in which an insured suffered bodily injury. In addressing whether such a limitation to uninsured/underinsured motorist coverage is valid under R.C. 3937.18, the court stated:

"The critical language for this case is that the coverage is 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom.' [R.C. 3937.18(A)(1).]

Thus, according to the statute, the question is whether the insured is legally entitled to recover damages sustained because of injury or death caused by an uninsured motorist." *Sexton, supra,* at 434, 23 O.O.3d at 386, 433 N.E.2d at 558.

The court found that to come within the meaning of the statute and therefore be entitled to coverage under his uninsured/underinsured motorist coverage, a claimant must show that (1) he is an insured; (2) he is entitled to recover damages sustained because of injury or death caused by an uninsured motorist; (3) the damages must result from injury, sickness, disease or death; and (4) the tortfeasor must be the owner or operator of an uninsured motor vehicle. The court noted that the statute does not indicate who must be injured or killed and determined that the fact that the father has a wrongful death cause of action under R.C. Chapter 2125, satisfies the requirement that he be legally entitled to damages. Upon application of the above test, the court found that the policy restrictions that limited recovery to accidents in which the insured suffered bodily injury are contrary to R.C. 3937.18 and, therefore, void.

In *Hill v. State Farm Ins. Co.* (Nov. 18, 1988), Lucas App. No. L–87–382, unreported, 1988 WL 121287, the appellee sought to recover under her own underinsured motorist policy for the wrongful death of her father. This court found therein that it "agrees that under the rationale of *Sexton,* [appellee] would be able to recover under the wrongful death statute. However, she already has recovered under the statute. An amount was awarded to Hill as a share of damages distributed under the Wrongful Death Act that was awarded to decedent's spouse under decedent's uninsured motorist coverage."

This court seemed to reason that, since she had recovered some amount as damages "under the statute," the second prong of the *Sexton* test, which is that the insured must be legally entitled to recover damages caused by an uninsured motorist, was not met. This court found further that appellee's claim was too remote from the intent of the legislators in enacting R.C. 3937.18 to allow recovery.

In *Senig v. Nationwide Mut. Ins. Co.* (1992), 76 Ohio App.3d 565, 602 N.E.2d 438, the Franklin County Court of Appeals applied the *Sexton* test to an action by two adult brothers against their respective insurance companies to recover uninsured motorist benefits for the wrongful death of their father. In its analysis the court stated:

"First, said plaintiffs are concededly insured under their respective policies, which provide uninsured motorist coverage. Second, [they] are legally entitled to recover for the death of their father, which was caused by the malfeasance of an uninsured motorist, pursuant to the wrongful death statute, R.C. 2125.02. Such statute provides that an action for wrongful death shall be brought 'for the exclusive benefit of the surviving spouse, *the children,* and the parents of the

decedent * * *.' (Emphasis added.) Because plaintiffs are the children of decedent, they clearly come within the scope of the statute and are entitled to recover damages for decedent's wrongful death. Third, the damages claimed by plaintiffs admittedly result from the death of their father. Also, R.C. 2125.02(A) provides that ' * * * the children * * * are rebuttably presumed to have suffered damages by reason of the wrongful death.' Unless and until rebutted by defendants, the plaintiffs are presumed to have suffered damages. Finally, the tortfeasor in this case was both the owner and operator of the uninsured motor vehicle involved in the accident." *Id.* at 571, 602 N.E.2d at 442.

The court ruled that the claimants were entitled to uninsured motorist coverage under their respective automobile policies for damages caused by the wrongful death of their father, notwithstanding the fact that their father did not live in the same household with either of them. The court found that language in the policies limiting recovery to bodily injury of the insured was contrary to R.C. 3937.18 and void.

In *Rotsinger v. State Farm Ins. Co.* (1992), 78 Ohio App.3d 696, 605 N.E.2d 1281, this court, relying on *Hill, supra,* found that a mother's claim against her own underinsured motorist insurance for the death of her adult daughter was too remote from the intent of the General Assembly to permit recovery.

The case now before this court provides cause for us to review our previous decisions in *Hill, supra,* and *Rotsinger, supra.* In examining the reasoning in *Hill,* we find that the court acknowledged that under *Sexton* the insured adult daughter "would be able to recover under the wrongful death statute" for the death of her mother. The court then goes on to deny that she has met the *Sexton* requirement that she is legally entitled to recover damages, because she had already recovered under the wrongful death statute by receiving a share of the money paid out under the decedent's uninsured motorist coverage. This finding, however, is not supported by any legal reasoning or analysis. Upon review, the only reasonable conclusion is rather that, if the insured adult daughter is entitled to recover under the "wrongful death statute," she is "legally entitled to recover damages." See *Senig, supra.* The fact that she had recovered a share of the settlement from her father's insurance company should not have been controlling.

Upon consideration of the foregoing, particularly the well-reasoned decision of the Franklin County Court of Appeals in *Senig, supra,* this court hereby overrules its prior decision in *Hill, supra,* to the extent that it conflicts with this opinion. Since our decision in *Rotsinger, supra* was based on *Hill,* it is also overruled to the extent it conflicts with this opinion.

As to appellant's reliance on *Pavia v. State Farm Mut. Ins. Co.* (Feb. 5, 1993), Erie App. No. E–92–16, unreported, 1993 WL 24411, in that case this court never

directly addressed the issue of whether the siblings of the decedent could recover under their own insurance policies. The dispute between appellants and their insurance companies involved whether or not the tortfeasor was underinsured and this court remanded the case for further proceedings without ever considering whether recovery was possible under the circumstances.

Upon consideration of the foregoing, this court finds that there remains no genuine issue as to any material fact and, when construing the evidence that was before the trial court most strongly in favor of appellant, reasonable minds can only conclude that (1) appellee is an insured under the Cincinnati Insurance policy; (2) pursuant to R.C. 2125.02, appellee is presumed to have suffered damages as a result of the wrongful death of her daughter; (3) the tortfeasor was underinsured at the time of the accident that caused the wrongful death of appellee's daughter; (4) appellee meets the four-part *Sexton* test; and (5) appellee is entitled to recover under her own uninsured/underinsured motorist coverage. Accordingly, appellant's second assignment of error is not well taken.

## II

Additional facts taken from the stipulations and appellee's affidavit that pertain to the appellant's first assignment of error are as follows. At the time of the accident, the tortfeasor was insured by Allstate with a $50,000 liability coverage limit. In a letter dated January 25, 1991, appellee, through her attorney who was also the attorney for the executor of Lydia's estate, presented her underinsured motorist claim to Cincinnati Insurance Company. In this letter, appellee's attorney notified Cincinnati that Gordon's insurance company was CNA and that "CNA has given me permission to settle with Allstate upon payment of their limits since the value of this case far exceeds Ushry's insurance limits. I am presenting a claim to Cincinnati Insurance Company pursuant to the policy issued to Anna Jarvis pursuant to the underinsured motorist provision." The executor, with the written permission of his insurance carrier, CNA, then settled the estate's wrongful death claim with Allstate for Ushry's $50,000 liability coverage limit and on April 23, 1991 executed a release which released Ushry from any further claims of the estate. Appellee neither signed the release nor received any of the proceeds of the Allstate Insurance Company settlement.

In her affidavit, appellee stated that she was not aware of any discussions between Allstate Insurance Company and her son-in-law, James H. Gordon, regarding the payment of any insurance proceeds; she did not participate in any discussions with Allstate Insurance Company regarding the settlement of any claims on behalf of its insured; no offer of settlement was made to her by Allstate; she never granted permission, authority or approval to James H. Gordon to settle any claims on her behalf; she did not sign any releases; she

received none of the settlement proceeds from Allstate; she never received any written or oral communication from Cincinnati Insurance Company advising her that certain things should or should not be done to preserve any subrogation rights which Cincinnati might have; and no one ever advised her that she had to tell the executor of Lydia's estate not to sign any releases or to exclude her from the operation of any releases, in order to protect Cincinnati Insurance Company's subrogation rights.

█ Appellant argues in support of its assignment of error that a wrongful death claim must be brought by the executor of the decedent's estate for the benefit of all persons, including appellee, entitled to damages and, therefore, when the executor released Ushry on behalf of the estate, that release included appellee's claim. It further argues that for it to protect its subrogation rights it must be given notice of any settlement offer received from the tortfeasor's insurance carrier. Appellant states that appellee never notified it that there was a settlement offer from Ushry's carrier and that the letter of January 25, 1991 was not sufficient notice because "no mention was made of any settlement discussions with Allstate and no request was made of it to forgo its subrogation rights if Allstate would settle." It further argues that, even if the letter was sufficient notice, there is a need to determine if the time period between the letter and the signing of release was a "reasonable time" for it to respond to appellee.

Appellee responds that the letter of January 25, 1991 was notice to appellant of the potential settlement and of her claim under her underinsurance coverage and that, once notice had been given to Cincinnati, it was obligated to assist her in preserving its subrogation rights. She further argues that the release by the executor was not executed until three months after that notification; that the three months provided sufficient time for appellant to protect its subrogation rights; and that she had nothing to do with the settlement offer or negotiations between the executor and Allstate.

█ As to appellant's argument that appellee was required to make her claim through the executor of her daughter's estate, the claim that appellee is seeking to establish is under the insurance policy issued to her by her own insurer. In such a situation "[t]he rights sought to be established exist, if at all, as a result of a contract executed between the insured and the defendant-carrier[ ]." The executor of a decedent's estate does not have standing to claim these rights. *Smith v. Erie Ins. Co.* (1990), 61 Ohio App.3d 794, 797, 573 N.E.2d 1174, 1176.

█ As to the effect of the release, a subrogation clause is "both a valid and enforceable precondition to the duty to provide underinsured motorist coverage." *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus. Generally, the rights of the insurer are no

greater than those of the insured and a release effectively destroys the insurer's right to subrogation and, therefore, discharges the insurer from providing underinsured motorist coverage. *Bogan, supra.* Once notice of a possible settlement is given, however, "[a]n insurer must aid its insured in the preservation of its subrogation rights." *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph one of the syllabus. "The insurer's failure to respond, within a reasonable time, to notification by its insured of a settlement offer will operate to void a subrogation clause in the insurer's underinsured motorist provision." *McDonald, supra,* paragraph three of the syllabus.

As to appellant's argument that this case should be remanded for a determination of whether or not it had a reasonable time to respond, both of the cases, *McDonald, supra,* and *Hartford Cas. Ins. Co. v. Easley* (1991), 62 Ohio St.3d 232, 581 N.E.2d 526, that it cites for this proposition can be distinguished from this case. Each was remanded for a determination as to whether or not there had been a reasonable time to respond because the trial courts involved had never made that determination. In this case, the trial court made the determination that, as a matter of law, the three months between the notice of the settlement and the signing of the release was "sufficient time (for appellant) to protect any subrogation rights" it might have.

Upon consideration of all of the evidence that was before the trial court in the summary judgment proceedings and the law as set forth above, this court finds that there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of appellant, reasonable minds can only conclude that (1) the letter of January 25, 1991 provided Cincinnati Insurance Company with reasonable notice that settlement negotiations were going on with the tortfeasor's insurance company and provided appellant a reasonable length of time to respond to that notice, and (2) appellant had a duty to act to protect its own subrogation rights but failed to do so. Accordingly, appellant's first assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PETER M. HANDWORK, J., concurs.

SHERCK, J., concurs separately.

SHERCK, Judge, concurring.

I concur with the opinion of the majority, but I am obligated to write separately concerning our overruling of *Hill* and *Rotsinger.*

Overruling prior decisions is a serious matter. It strikes hard at the concept of predictability which serves as the foundation of law.

However, the fact is that court decisions interpreting R.C. 2125.01 have been anything but predictable. While some may say that our decision today simply continues that trend, I believe that it now brings us in line with the recent pronouncement of the Supreme Court of Ohio contained in the syllabus of *Savoie v. Grange Mut. Ins. Cos.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, which spoke to the version of the statute in effect at the time of the trial court's decision. There, the court clearly stated that one " * * * who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to R.C. 2125.01 has a separate claim subject to a separate per person policy limit." *Id.* at paragraph four of the syllabus.