RATLIFF, Appellee,

v.

GRANGE MUTUAL CASUALTY COMPANY, Appellant.

[Cite as *Ratliff v. Grange Mut. Cas. Co.* (1997), 118 Ohio App.3d 116.]

Court of Appeals of Ohio,
Third District, Hardin County.

No. 6–96–13.

Decided Feb. 5, 1997.

*John M. Tudor*, for appellee.

*Oxley, Malone, Fitzgerald & Hollister* and *Dennis M. Fitzgerald*; *Cory, Meredith, Witter & Roush* and *David A. Cheney*, for appellant.

HADLEY, Presiding Judge.

This is an appeal from the Hardin County Court of Common Pleas judgment finding Grange Mutual Casualty Company ("appellant") liable to Berniece Ratliff ("appellee") under the underinsured motorist portion of its policy. Appellee's claim arose out of a motor vehicle accident which occurred on May 22, 1992.

Appellee and her husband were injured in an automobile collision with a negligent driver, Keli Britton ("Britton"), on May 22, 1992. Britton's insurance policy through State Farm Insurance Company ("State Farm") was limited to $25,000. Appellee's insurance policy with appellant had higher limits and contained an underinsured motorist protection clause.

State Farm was notified of the accident on May 23, 1992, and after a thorough investigation, sent a letter on July 28, 1993 to appellant advising appellant of its investigation and the possibility of a settlement offer at a later date.

Meanwhile, appellee's attorney contacted appellant on July 27, 1993, inquiring about appellee's underinsured motorist rights. In response to that letter, a claims representative met with appellee's attorney on September 8, 1993. At that meeting, the representative advised appellee's attorney that under the policy language, appellant's consent to settle would be needed prior to any settlement with State Farm.

On November 1, 1993, State Farm's claim representative received authority to settle appellee's claim for $25,000. Therefore, on November 11, 1993, appellee's attorney telephoned appellant's claim representative and told him that State Farm had offered to settle appellee's claim for $25,000.

Thereafter, on November 12, 1993, appellee's attorney sent a letter to appellant's claim representative confirming their telephone conversation on November 11, 1993. Additionally, the letter indicated that appellee was inclined to accept

the offer but wanted to preserve her underinsured motorist coverage benefits with appellant as well.[1]  Appellee requested that appellant contact her regarding this matter.

On November 19, 1993, appellee met with the State Farm representative and signed a release discharging further rights to her claim against Britton in exchange for a $25,000 settlement.[2]  Appellee was not accompanied by her attorney at that time.

On December 7, 1993, appellant's representative contacted State Farm to inquire about further medical bills.  State Farm informed appellant that it had already settled with appellee.  Upon learning this information, appellant contacted appellee's attorney, who confirmed State Farm's statement.  Consequently, appellant denied appellee's uninsured motorist claim on December 22, 1993.

Appellee subsequently filed a claim for declaratory judgment and damages in the Hardin County Common Pleas Court on May 13, 1994.  On June 17, 1996, a trial was held on the issue of liability on the part of appellant for failure to pay appellee's uninsured motorist claim.  On August 14, 1996, the trial court found appellant to be liable to appellee.  It is from this judgment that appellant is appealing the following assignment of error:

"The trial court erred as a matter of law to the prejudice of Grange in declaring after a bench trial on liability only that Grange was liable to Mrs. Ratliff on its uninsured/underinsured motorist's coverage."

In its sole assignment of error, appellant contends that appellee violated the terms of her insurance policy with appellant when she settled her claim with the tortfeasor without obtaining appellant's consent.  The underinsured/uninsured motorist clause that is in dispute provides:

"A.  We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident.  * * * We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment, with our consent, of judgments or settlements."

Moreover, under the heading entitled "EXCLUSIONS," the policy further provided as follows:

---

1.  Enclosed with the letter were copies of additional medical information relevant to appellee's claim.

2.  Appellee's husband received an additional $10,000 for the injuries he received in the accident.

"A. We do not provide Uninsured Motorist Coverage for <u>bodily injury</u> sustained by any person:

" * * * *

"2) if that person or legal representative settled the bodily injury claim without our consent."

■ The Ohio Supreme Court has held that subrogation·clauses, such as the one at issue here, are "both a valid and enforceable precondition to the duty to provide underinsured motorist coverage." *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus. These clauses protect the insurer's subrogation rights to pursue other liable parties for payment on their loss and to prevent fraud or collusion in the decision to release or settle a claim by an insured. However, both the insurer and the insured share the burden of preserving the insured's subrogation rights. *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 31, 543 N.E.2d 456, 460.

■ When a settlement offer is tendered, "the injured party is the only one in a position to protect or destroy the underinsurer's subrogation rights" prior to notifying his underinsured motorist coverage carrier of the offer. *Id.* Once notice of a possible settlement is given, however, an insurer must respond within a reasonable time to preserve its subrogation rights. *Id.* If the insurer fails to act within a reasonable time, its subrogation clause will become void and the insured may still collect underinsured motorist benefits. *Id.*

■ Appellant maintains that its subrogation rights were wrongfully destroyed when appellant released the tortfeasor prior to obtaining appellant's consent. In support of its contention, appellant argues that an insufficient time to evaluate its subrogation rights had elapsed between notice of State Farm's settlement offer and the signing of the release by appellee.[3] Specifically, appellant argues that it needed more time to assess the case regarding such relevant factors as (1) the amount of any remaining liability insurance, (2) the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation, (3) the total amount of the insured's damages, and (4) the expenses and risks of litigating the insured's cause of action. Therefore, given the relatively short time span between notification and acceptance of the settlement offer, appellant maintains that it did not waive its subrogation rights when it failed to respond to appellee prior to her acceptance of the settlement offer.

However, we find that the record adequately supports the trial court's decision that appellant failed to respond within a reasonable time to notification by its

---

**3.** Eight days had elapsed between appellee's notification of the settlement offer and the date appellee accepted State Farm's settlement offer.

insured of a settlement offer. Although only eight days had elapsed between the notification and the acceptance of the settlement offer, appellant was aware that a potential settlement offer would be forthcoming, as evidenced by two letters received by appellant in July 1993.[4]

Moreover, we find that the one hundred eight days that had elapsed between the notification of a potential settlement offer [5] and the official notification of the settlement offer [6] provided appellant ample time to evaluate the strengths of its case regarding the feasibility of protecting its subrogation rights. Prior to the official notification, the record reflects that appellant knew the tortfeasor's policy limits [7] and that appellee's injuries were in excess of that amount.[8] Finally, with a settlement offer of $25,000 on November 12, 1993, appellant was aware that all liability insurance had been exhausted. Therefore, contrary to appellant's contentions, we find that appellant did have sufficient time to evaluate the relevant factors pertaining to this case.

Furthermore, we hold that the letters of July 1993 provided appellant with reasonable notice that settlement negotiations were being held with the tortfeasor's insurance company and that, consequently, appellant had a reasonable length of time to respond to protect its subrogation rights. See *Cincinnati Ins. Co. v. Jarvis* (1994), 98 Ohio App.3d 155, 164, 648 N.E.2d 30, 36 (holding that three months' notice of settlement negotiations provided the insurance company with a reasonable time to protects its interests); *Stahl v. State Farm Mut. Auto. Ins. Co.* (1992), 82 Ohio App.3d 599, 603, 612 N.E.2d 1260, 1262 (holding that written and verbal communications of appellee's intent to settle one month prior to settling provided the insurance company with a reasonable time to protect its subrogation rights). Here, the appellant had three and a half months to adequately assess its case and the feasibility of protecting its subrogation rights.

---

4. The first letter, dated July 27, 1993, was sent by appellee's attorney. That letter stated the intent "to put Grange Mutual Casualty Company on notice of a likely claim resulting from this accident." The second letter, dated July 28, 1993, was sent by a State Farm investigator to Grange's Subrogation Examiner. That letter provided: "This letter is to inform you that we are now trying to work with the Ratliffs to gather the appropriate information so that we may work towards an amicable settlement in the near future."

5. Appellant was first made aware of a potential settlement negotiation upon receipt of the July 27 and July 28, 1993 letters.

6. That offer was communicated verbally on November 11, 1993 to appellant by appellee's attorney and then by letter dated on November 12, 1993.

7. In a letter from appellee's attorney dated July 27, 1993, appellant was made aware that the tortfeasor's policy was limited to $25,000.

8. Appellant had received medical documentation of appellee's injuries from appellee's doctor as well as from appellee's attorney.

However, appellant did not do so and, consequently, its lack of action voided its subrogation rights. Therefore, appellant's sole assignment of error is overruled.

Accordingly, the judgment of the Hardin County Court of Common Pleas finding appellant to be liable on its uninsured/underinsured motorist coverage is affirmed.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.