BENTLEY, Admr., et al., Appellees,

v.

GRANGE MUTUAL CASUALTY INSURANCE COMPANY, Appellant.

[Cite as *Bentley v. Grange Mut. Cas. Ins. Co.* (1997), 119 Ohio App.3d 93.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE07–896.

Decided April 10, 1997.

94

*Clark, Perdue, Roberts & Scott, Douglas S. Roberts* and *Glen R. Pritchard,* for appellees.

*Hamilton, Kramer, Myers & Cheek, Brian J. Bradigan* and *Thomas J. Conkle,* for appellant.

LAZARUS, Judge.

Defendant-appellant, Grange Mutual Casualty Insurance Company ("Grange"), appeals from a judgment of the Franklin County Court of Common Pleas declaring that plaintiffs-appellees, Kendall R. Bentley, Herman Keith Bentley, Jr., April M. Beckley, and Tracy L. Myers are entitled to underinsured motorist coverage. We affirm for the reasons that follow.

On March 3, 1988, Millard Scott Bentley died while a passenger in a motor vehicle negligently operated by Todd Tekip. Millard was survived by his father Herman, his mother Darlene, and his four brothers and sisters, the appellees

herein. All six survivors originally were plaintiffs in this action. The trial court granted summary judgment against the parents based on the doctrine of *res judicata*, or claim preclusion, and there has been no appeal from that judgment. The action proceeded to a bench trial on stipulated facts and trial briefs, whereupon the trial court granted judgment in favor of appellees. Grange asserts two assignments of error:

1. "The trial court erred in deciding that the plaintiffs, the siblings of Millard Bentley, are entitled to underinsured motorist coverage under a Grange auto insurance policy issued to Herman Bentley, Millard's father and the executor of Millard's estate. After Herman Bentley, as the personal representative of Millard's estate, settled with the tortfeasor, the brothers and sisters were no longer 'legally entitled to recover,' a condition precedent under the insurance contract to underinsured motorist benefits."

2. "Plaintiffs-appellees' claim for underinsured motorist benefits was adjudicated to a final decision and judgment in the Court of Common Pleas of Cuyahoga County, *Herman Bentley v. Grange* (1991), case No. 193137. The trial court erred in its determination that the decision was not a bar as to all the beneficiaries of the estate, as the administrator of the estate is the sole person authorized by law to prosecute a wrongful death action. In addition, even though the remaining plaintiffs were not named parties in the earlier suit, they were in privity with the named parties, and they are now collaterally estopped from relitigating."

Decedent's father, Herman Bentley, was appointed administrator of the estate. At the time of the accident, Herman was the named insured on a policy of automobile insurance issued by appellant with uninsured/underinsured motorist ("UM") coverage of $100,000 per person and $300,000 per occurrence. With the consent of appellant, Tekip's insurer, Western Reserve Insurance Company, paid $100,000 as exhaustion of Tekip's policy limits for the settlement of the wrongful death claims against Tekip. As a condition of the settlement, Herman Bentley, in his capacity as the administrator of the estate, released Tekip from liability. Under Ohio's wrongful death statute, specifically R.C. 2125.02(C), the administrator controls all wrongful death claims against the tortfeasor, including those of appellees, the decedent's brothers and sisters. Therefore, the settlement and release by the administrator included release of appellees' wrongful death claims against the tortfeasor Tekip.

On July 10, 1990, an action was filed in the Cuyahoga County Court of Common Pleas against appellant, *Bentley v. Grange Mut. Ins. Co.*, case No. 193137. Because the limits of the policy issued by appellant were the same as the limits of the tortfeasor's policy, the Cuyahoga County Court of Common Pleas, on April

11, 1991, granted judgment in favor of appellant. The court relied on *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, syllabus, which states:

"Unless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage. (R.C. 3937.18[A][2], construed and applied; *Wood v. Shepard* [1988], 38 Ohio St.3d 86, 526 N.E.2d 1089, distinguished and explained.)"

On October 1, 1993, the Supreme Court of Ohio expressly overruled *Hill:*

"An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. (*Hill v. Allstate Ins. Co.* [1990], 50 Ohio St.3d 243, 553 N.E.2d 658, overruled.)" *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph three of the syllabus.

On November 23, 1993, appellees sent appellant a demand for $200,000 of underinsured motorist ("UM") benefits, which appellant denied.

On March 17, 1994, an action against appellant, case No. 94CVC–03–1856, was filed in the Franklin County Court of Common Pleas. On October 31, 1994, the trial court issued a decision granting summary judgment in favor of appellant on the ground that under the doctrine of *res judicata,* appellees' claims were barred by the judgment in the 1991 Cuyahoga County action. Appellees voluntarily dismissed the action prior to judgment being entered upon that decision.

Four days later, on November 4, 1994, the complaint was refiled in the Franklin County Court of Common Pleas under case No. 94CVH–11–7870, the action from which this appeal arises. The plaintiffs were Herman Bentley, decedent's father, individually and as administrator of the estate, decedent's mother Darlene Bentley, and decedent's four brothers and sisters. Appellant again moved for summary judgment on the ground that, under the doctrine of *res judicata,* appellees' claims were barred by the judgment in the Cuyahoga County action. On August 7, 1995, the trial court sustained appellant's motion as to plaintiffs Herman Bentley individually and Darlene Bentley, but overruled the motion as to the other plaintiffs on the ground that because they were not parties in the Cuyahoga County action, they could not be bound by that judgment.

The action proceeded to trial on stipulated facts and trial briefs. In a June 5, 1996 decision and subsequent judgment entry,[1] the court declared that appellees are entitled to UM coverage subject to the $100,000 and $300,000 policy limits,

---

1. The judgment entry erroneously states that the case was decided on summary judgment.

and that appellant is obligated to submit the issue of liability and damages to binding arbitration pursuant to the terms of the policy.

■ In the first assignment of error, appellant argues that appellees' rights to UM coverage were terminated by the release of the tortfeasor, which was part of the administrator's settlement with the tortfeasor and the tortfeasor's liability insurer.

In the UM provision of the policy issued by appellant, appellant promises "[t]o pay all sums *which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle* because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle." (Emphasis added.)

This language mirrors the language of R.C. 3937.18(A)(1),[2] which requires UM coverage "for the protection of persons insured * * * who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." Appellant argues that appellees are no longer "legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle" because their legal entitlement to recover damages from the tortfeasor terminated when their wrongful death case against the tortfeasor was settled in 1990. Appellant argues that because appellees no longer have claims against the tortfeasor—that is, they are no longer "legally entitled to recover damages" from him—appellees have no right to UM benefits under the terms of the policy.

Appellant's interpretation of "legally entitled to recover" is too restrictive. Although appellees no longer have claims against the tortfeasor as a result of the settlement, the Supreme Court in *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus, held that the right to UM coverage survives the insured's release of the underinsured motorist from tort liability when the UM insurer has failed to reasonably protect its subrogation rights:

"When an insured has given his underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying the underinsured motorist benefits before the release but does not do so, the release will not preclude recovery of underinsurance benefits." *Id.*

---

2. R.C. 3937.18 was substantially amended after decedent's death and the Supreme Court's decision in *Savoie, supra.*

*McDonald* supports the proposition that an insured retains the contract right to UM coverage despite the fact that the tort claim against the tortfeasor has been settled, if the UM insurer consented to the settlement. The second paragraph of the *McDonald* syllabus is equally applicable when the underlying tort is subject to the wrongful death statute. See, *e.g., Cincinnati Ins. Co. v. Jarvis* (1994), 98 Ohio App.3d 155, 162–164, 648 N.E.2d 30, 34–36; *Lanza–Costlow v. State Farm Fire & Cas. Co.* (1996), 115 Ohio App.3d 106, 684 N.E.2d 742; *Hydel v. Cincinnati Ins. Co.* (Jan. 11, 1996), Cuyahoga App. No. 68552, unreported, 1996 WL 11316; *Motorists Mut. Ins. Co. v. Cincinnati Ins. Co.* (Sept. 10, 1993), Wood App. No. 92WD087, unreported, 1993 WL 342587; *Gingerich v. Nationwide Mut. Ins. Co.* (Aug. 13, 1990), Tuscarawas App. No. 89AP110088, unreported, 1990 WL 120835.

Appellant relies on three cases for the proposition that an insured has no right to UM coverage once the underlying tort claim is settled. In *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 245–246, 581 N.E.2d 533, 535–537, the court held that Ohio residents did not have a right to UM coverage because under the "no fault" insurance law of Michigan they were not legally entitled to recover damages from the tortfeasor. Thus, in *Kurent,* the plaintiffs had never had a right to UM coverage, and the issue of settlement with the tortfeasor was moot.

In *Love v. Nationwide Mut. Ins.* (1995), 104 Ohio App.3d 804, 663 N.E.2d 407, the plaintiffs were sisters whose parents died in a car accident caused by the negligence of the driver of another car. A third sister was the administrator of the parents' estates, and she settled the wrongful death claims. Two months later, the plaintiffs filed UM claims with their own insurers, which up to that point had been unaware of the plaintiffs' potential claims and therefore unable to protect their subrogation rights. This court upheld summary judgment in favor of the insurers based on *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus, modified by *McDonald v. Republic–Franklin Ins. Co., supra,* 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus. In *Bogan,* the Supreme Court held that an insurer may condition UM coverage on the insured's having protected the insurer's right to be subrogated to the insureds' claims against the tortfeasor. This court in *Love* merely followed *Bogan* and enforced the subrogation clause.[3] In *Love,* the insurer did not receive advance notice of the settlement; in this case, in contrast,

---

**3.** The rule of *Bogan* was applied in these other wrongful death cases: *Frazier v. United Ohio Ins. Co.* (June 27, 1995), Franklin App. No. 94APE09–1339, unreported, 1995 WL 390945; *Bacon v. W. Am. Ins. Co.* (1996), 115 Ohio App.3d 433, 685 N.E.2d 781; *Eilerman v. Colegate* (1996), 115 Ohio App.3d 344, 685 N.E.2d 548; *Critoria v. Cincinnati Ins. Co.* (Feb. 12, 1996), Stark App. No.1995CA00248, unreported, 1996 WL 74084.

appellant not only had notice, it actually consented to appellees' settlement with the tortfeasor. *Love* was a correct application of *Bogan* and distinguishable from this case.

The court in *Love* stated that the plaintiffs' rights to UM coverage were terminated by the settlement of the underlying tort claims. It is that statement in *Love* upon which appellant relies. Though correct as a general rule, *McDonald* demonstrates that this statement is not an unconditional proposition of law. Appellant's error is applying statements from *Love* out of the context in which they were made, that context being one in which the UM insurer had no advance notice of the settlement with the tortfeasor.

Regrettably, however, this court made the same mistake of applying *Love* out of context in the third case upon which appellant relies, *Sparks v. State Farm Mut. Auto. Ins. Co.* (Oct. 24, 1995), Franklin App. No. 95APE03–339, unreported, 1995 WL 632081, discretionary appeal allowed (1996), 75 Ohio St.3d 1476, 663 N.E.2d 1303, appeal dismissed on application of the parties in (1997), 78 Ohio St.3d 1471, 678 N.E.2d 580. The majority in *Sparks*, inappropriately relying on language in *Love*, held that despite the fact that the UM insurer consented to the administrator's settlement with the tortfeasor,[4] the wrongful death statutory beneficiaries could not recover UM benefits because the settlement terminated their legal entitlement to recover from the tortfeasor. We agree with appellant that *Sparks* stands for an unconditional proposition of law that an insured has no right to UM coverage once the underlying tort claim is settled. Because the holding of *Sparks* is contrary to the second paragraph of the syllabus of *McDonald*, 45 Ohio St.3d 27, 543 N.E.2d 456, we decline to follow it. The court in *Sparks* should have held that the plaintiffs retained their UM contract rights because their UM insurer consented to the settlement.

Under *McDonald*, because appellant consented to the settlement in which appellees' wrongful death claims against the tortfeasor were released, the release did not effect a forfeiture of appellees' contract rights to UM coverage. The first assignment of error is not well taken.

█ In the second assignment of error, appellant argues that because the issue of whether appellees retain their rights to UM coverage was determined in the 1991 Cuyahoga County action, they are barred by the doctrine of collateral estoppel, or issue preclusion, from litigating the issue here. In the 1991 Cuyahoga County action, the court declared that under *Hill v. Allstate Ins. Co.*,

---

**4.** *Sparks* involved only one insurer: the tortfeasor, the decedent, and the wrongful death statutory beneficiaries were all insured by policies issued by State Farm. Therefore, it was as if State Farm as UM insurer of the wrongful death statutory beneficiaries "consented" to the settlement with State Farm as the tortfeasor's liability insurer.

50 Ohio St.3d 243, 553 N.E.2d 658, syllabus, overruled by *Savoie*, 67 Ohio St.3d 500, 620 N.E.2d 809, paragraph three of the syllabus, because the limits of the policy issued by appellant were the same as the liability limits of the tortfeasor's policy, plaintiffs Herman and Darlene Bentley had no right to UM coverage. *Savoie* revealed that decision to be incorrect, and appellees now seek to assert their rights to UM coverage.

Because appellees were neither parties to the Cuyahoga County action nor in privity with the parties, the doctrine of collateral estoppel is inapplicable.

"Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 922–923.

The doctrine of *res judicata,* which encompasses both claim preclusion and issue preclusion, is necessary to promote finality of judgments and prevent multiplicity of litigation, but it should not be permitted to encroach upon fundamental rights, *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 116, 49 O.O.2d 435, 439–440, 254 N.E.2d 10, 15, including the right to due process.

"The doctrine of res judicata rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. * * * The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. * * * And as a state may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard * * * so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." *Postal Telegraph Cable Co. v. City of Newport, Ky.* (1918), 247 U.S. 464, 476, 38 S.Ct. 566, 570–571, 62 L.Ed. 1215, 1221.

In this case, the first two elements of collateral estoppel as set forth in *Thompson* are presumed satisfied. Appellant's second assignment of error is based on the argument that the third element is also satisfied, that is, that appellees were in privity with their parents, Herman and Darlene, who were the plaintiffs in the Cuyahoga County action. Therefore, the issue presented is whether persons who are wrongful death statutory beneficiaries of a single decedent and who have identical rights to UM coverage under a single insurance policy are in privity with each other within the meaning of the doctrine of

collateral estoppel so that an adjudication of the right of one to UM coverage will be binding on the others.

■ "Generally, a person is in privity with another if he succeeds to an estate or an interest formerly held by another." *Whitehead,* 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, at paragraph four of the syllabus. Appellees did not succeed to an interest of their parents. Their rights to UM coverage, although identical, are independent of the rights of their parents. Under the Restatement of the Law 2d, Judgments, other factors can contribute to a determination of privity, but appellant has not alleged that appellees controlled the Cuyahoga County action,[5] that appellees agreed to be bound by the Cuyahoga County action,[6] that appellees were represented by their parents in the Cuyahoga County action,[7] or that there existed between appellees and their parents any substantive legal relationship resulting in preclusion.[8] "Most courts * * * will not bind a nonparty to a decision adverse to his interests merely because a common question of fact or law exists in the cases and the nonparty had the same general interest as one of the parties to the lawsuit." Semmel, Collateral Estoppel, Mutuality and Joinder of Parties (1968), 68 Colum.L.Rev. 1457, 1460. Appellees were entitled to their individual day or days in court and were under no obligation to make their day in court the same as that of their parents.

---

**5.** Restatement of the Law 2d, Judgments (1982) 382, Section 39, provides: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."

**6.** Restatement of the Law 2d, Judgments (1982), Section 40, provides: "A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."

**7.** Restatement of the Law 2d, Judgments (1982) 393, Section 41, provides:

"(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:

"(a) The trustee of an estate or interest of which the person is a beneficiary; or

"(b) Invested by the person with authority to represent him in an action; or

"(c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or

"(d) An official or agency invested by law with authority to represent the person's interests; or

"(e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.

"(2) A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process. Exceptions to this general rule are stated in § 42."

**8.** See Restatement of the Law 2d, Judgments (1982) 1–124, Sections 43–61 (Topic 2: Substantive Legal Relationships Resulting in Preclusion).

The Supreme Court of Ohio has shown that it is willing to relax the mutuality requirement where justice would reasonably require it. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 199, 2 OBR 732, 737–738, 443 N.E.2d 978, 984–985. The court in *Goodson* stated that many factors, considerations, and elements enter into any judgment of a court and that the benefits garnered from applying collateral estoppel in a particular case must be balanced against the costs. "The major risk linked to such an application," the court stated, "is that of an erroneous determination in the first case." *Id.* at 201–202, 2 OBR at 739–741, 443 N.E.2d at 985–987. In this case, justice requires enforcement of the mutuality requirement, because allowing appellant the application of defensive collateral estoppel would mean giving effect to a judgment that we now know in the light of *Savoie* to have been erroneous.

■ Appellant also argues that the doctrine of collateral estoppel applies because appellees were in privity with the administrator of the estate, who was a plaintiff in the Cuyahoga County action. This argument fails for lack of proof. The burden is on the party asserting collateral estoppel to prove all the elements thereof, and no evidence regarding the parties to the Cuyahoga County action was introduced for purpose of trial.[9] Moreover, courts have stated that an administrator does not have standing to enforce the UM rights of the wrongful death statutory beneficiaries. See *Smith v. Erie Ins. Group* (1990), 61 Ohio App.3d 794, 797, 573 N.E.2d 1174, 1176–1177; *Cincinnati Ins. Co. v. Jarvis*

---

9. The trial court found that there was no evidence that the administrator was a party in the Cuyahoga County action. Even the evidence filed for purposes of summary judgment suggests that appellant's argument is disingenuous. It appears that the plaintiffs in the Cuyahoga County action were the parents individually, not the administrator. A copy of the complaint in the Cuyahoga County action was attached to appellant's November 21, 1995 motion for reconsideration of the trial court's August 7, 1995 decision denying summary judgment. The caption of the complaint identifies the plaintiffs as "HERMAN BENTLEY" and "DARLENE BENTLEY," not Herman Bentley as administrator. The complaint identifies itself as a "COMPLAINT FOR DECLARATORY JUDGMENT ON INSURER'S OBLIGATION UNDER UNDERINSURED MOTORIST COVERAGE," an action an administrator does not have standing to pursue. The complaint's prayer for relief reads:
"WHEREFORE, plaintiff demands judgment:
"I. Determining plaintiffs are insured under the underinsured motorist coverage provision of their policy with defendant;
"II. Determining their rights and the obligations of defendant under the policy;
"III. Directing the defendant to submit plaintiffs' claim to recover damages pursuant to Revised Code 2125.02 for wrongful death under the underinsured motorist provision of the policy; and
"IV. For costs."
Appellant's January 19, 1995 motion for summary judgment includes as Exhibit B a photocopy of the journal entry in the Cuyahoga County action, at the top of which is handwritten "Herman Bentley et al. vs. Grange Mutual Ins. Co." The record does not contain a copy of the trial court's opinion.

(1994), 98 Ohio App.3d 155, 163, 648 N.E.2d 30, 35–36 (citing *Smith*); *Hydel, supra* (citing *Jarvis*).

Because appellees were neither parties to the Cuyahoga County action nor in privity with the parties, the doctrine of collateral estoppel is inapplicable. The second assignment of error is not well taken.

For the foregoing reasons, both assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK, P.J., concurs.

CLOSE, J., dissents.

CLOSE, Judge, dissenting.

I am troubled by the majority's holding in its second assignment of error. All matters in this case were resolved on April 11, 1991, when judgment was granted in favor of appellant in the Court of Common Pleas of Cuyahoga County, *Herman Bentley v. Grange,* case No. 193127. Relying on *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, the court in *Bentley* disposed of the case in accordance with the then prevailing law, finding that, because the tortfeasor's insurance policy limits were identical to that of the Bentleys, the Bentleys were not entitled to underinsured motorist coverage under their policy with Grange. Apparently, no appeal was filed from that trial court decision. Although *Bentley* was accurately decided at that time, two and one-half years later the Supreme Court of Ohio expressly overruled *Hill* in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, prompting appellants to seek additional recovery under the underinsured motorist portion of their policy pursuant to the *Savoie* holding. The trial court held that, while the doctrine of *res judicata* precluded the parents from bringing another action, the siblings of the decedent, as separate parties, were not precluded from bringing a wrongful death action for underinsured motorist coverage. In reaching that decision, it was necessary for the trial court to find that the parents, and Herman Bentley, in particular, brought the action individually and not as a representative of their decedent son's estate.

I respectfully dissent from the majority view, in that I believe that appellees are collaterally estopped from asserting their wrongful death claim. The Ohio Supreme Court in *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 922–923, established a three-prong test necessary for collateral estoppel:

"Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id.,* citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph two of the syllabus.

As the first two prongs are satisfied, it is the third prong of the *Thompson* test that is at issue here, *i.e.,* whether the siblings were in privity to the parties of the first action.

First, I point out that R.C. 2125.02(A)(1) provides:

"[A]n action for wrongful death *shall* be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the elusive benefit of the other next of kin of the decedent." (Emphasis added.)

The language contained in this statute mandates that the action for wrongful death be brought only by a personal representative. A major policy reason behind the enactment of this statute is so that defendants " 'may not again be haled into court to answer for the same wrong.' " *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 110, 50 O.O.2d 268, 269–270, 255 N.E.2d 628, 629, quoting *Douglas v. Daniels Bros. Coal Co.* (1939), 135 Ohio St. 641, 647, 15 O.O. 12, 15, 22 N.E.2d 195, 198. The Ohio Supreme Court in *Ramsey v. Neiman* (1994), 69 Ohio St.3d 508, 511, 634 N.E.2d 211, 213, states:

"[G]ood policy reasons exist for requiring, as a condition precedent to the maintenance of a wrongful death action, that the person bringing the action be appointed by a court. Such a requirement eliminates the possibility that the defendant will face more than one lawsuit. It also allows for potential conflicts of interest to be revealed in advance of the filing of the action. And it ensures to some degree that the wrongful death action will be brought by a person who will act in the best interests of the beneficiaries, the real parties in interest."

I believe that the claim in the instant case is predicated upon a wrongful death. Keeping in mind R.C. 2125.02(A)(1) and its mandate, we look, first, at the fact that the probate court approved the settlement of a *wrongful death claim* made by the father and administrator, Herman Bentley. Whether the caption or style of the case showed Herman Bentley as administrator is irrelevant because the wrongful death action could have been brought only by Herman Bentley, administrator of the estate of Millard Bentley. The court, in its disposition of the matter, treated the case like a wrongful death case. Second, in the parents' action for declaratory judgment in the Cuyahoga County court, they unsuccessfully sought

to recover underinsured motorist benefits for the wrongful death of their son. Further, in appellees' current action filed in the Franklin County Court of Common Pleas, Count One, paragraph 5, of appellees' complaint reads: "The decedent is survived by next of kin who have sustained damages pursuant to the Ohio Wrongful Death Statute as a result of the death of the decedent." Clearly, both actions sought to relitigate the wrongful death claim in the instant action. Appellees are collaterally estopped from bringing this claim because it is the same issue that was previously decided by the Cuyahoga County Court of Common Pleas. *Tennant v. State Farm Mut. Ins. Co.* (1991), 81 Ohio App.3d 20, 610 N.E.2d 437. While siblings of the decedent are, by statute, entitled to pursue a wrongful death claim as "next of kin," *Shoemaker v. Crawford* (1991), 78 Ohio App.3d 53, 603 N.E.2d 1114, appellees may not bring a claim that is barred by collateral estoppel.

Further, appellees are collaterally estopped because they are, by way of privity, the same parties to the original action. "Privity" has been defined as "mutual or successive relationships to the same right of property, or such as identification of interest of one person with another as to represent the same legal right." Black's Law Dictionary (6 Ed.1990) 1199. Assuming, as we would have this court do, that Herman Bentley brought a wrongful death claim in his capacity as administrator of Millard Bentley's estate, we should hold that appellees are in privity with Herman Bentley as administrator. " 'It is the duty of a fiduciary of an estate to serve as representative of the entire estate. Such fiduciary, in the administration of an estate, owes a duty to beneficiaries to act in a manner which protects the beneficiaries' interests. We believe that this duty places the beneficiaries in privity with the executor.' " *Weisberger v. Home Ins. Cos.* (1991), 76 Ohio App.3d 391, 394, 601 N.E.2d 660, 662–663, citing *Elam v. Hyatt Legal Serv.* (1989), 44 Ohio St.3d 175, 541 N.E.2d 616. The privity, then, is between the beneficiaries (the siblings) and the administrator (Herman Bentley). Under any reasonable definition, these parties were in "privity" and, therefore, are bound collaterally by the judgment of the Cuyahoga County Court of Common Pleas.

For the foregoing reasons, I would sustain the second assignment of error and reverse the judgment of the trial court.

[Cite as *State v. Edwards* (1997), 119 Ohio App.3d 106.]