Day, J.
 

 The first question presented is whether the right of action is barred by the statute of limitation.
 

 It is conceded that the original petition was filed within the time limited by statute and that the amended petition was filed after the statutory period of limitation had expired.
 

 It is well settled in Ohio that if an amended petition does not set up a new cause of action it will not be barred by the statute fixing a period of limitation for the institution of suit, but will relate back to the date of the filing of the original petition. See 25 Ohio Jurisprudence, 588, Section 241;
 
 Louisville & N. Rd. Co.
 
 v.
 
 Greene, Admx.,
 
 113 Ohio St., 546, 149 N. E., 876. The rule of relation back was followed in
 
 Archdeacon,
 
 
 *645
 

 Admr.,
 
 v.
 
 Cincinnati Gas & Electric Co.,
 
 76 Ohio St., 97, 81 N. E., 152,
 
 Missouri, K. & T. Ry. Co.
 
 v.
 
 Wulf,
 
 226 U. S., 570, 57 L. Ed., 355, 33 S. Ct., 135, and
 
 Clinchfield Coal Corp.
 
 v.
 
 Osborne’s Admr.,
 
 114 Va., 13, 75 S. E., 750, all of which were wrongful death cases.
 

 In the instant case, the original petition alleges that plaintiff is the duly appointed and qualified administratrix of the estate of her husband, Yerne Douglas, deceased. The amended petition alleges that at the time of the filing of the original petition plaintiff erroneously believed herself appointed but was in fact not appointed and qualified as such administratrix; that since the filing of her original petition, the error was discovered and she has been appointed and qualified as such administratrix. The amended petition further states that she adopts and ratifies her act in commencing the suit. In all other respects, the petition and amended petition are identical insofar as they relate to the claims made against defendants. The amended petition in no manner changes the cause of action as originally stated, and does not set up a new cause of action.
 

 Section 11363, General Code, authorizes a court, in the furtherance of justice, to amend any pleading, process or proceeding, before or after judgment, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case when the amendment does not substantially change the claim. Under authority of Section 10214, General Code, the provisions of Section 11363, General Code, are to be liberally construed in order that the parties may be assisted in obtaining justice.
 

 Under and by virtue of these provisions, this court has approved substitution of plaintiffs. In the case of
 
 Van Camp
 
 v.
 
 McCulley, Trustee,
 
 89 Ohio St., 1, 104 N. E., 1004, an action was brought by a creditor of an in
 
 *646
 
 solvent corporation on behalf of himself and other creditors against Yan Camp and other stockholders of the company, to compel payment into court of unpaid subscriptions to capital stock of the corporation. A demurrer was filed on the ground that plaintiff had not reduced his claim to judgment and exhausted his legal remedies. Pending the demurrer, a trustee of the insolvent corporation was appointed in bankruptcy. The court thereupon substituted the trustee as plaintiff and permitted him to file an amended petition. Judge Wilkin, in his opinion, said:
 

 “Manifestly there was in the beginning, as shown by the original petition, a cause of action in somebody. If Yan Camp was owing an unpaid subscription to stock of this company and the company’s affairs were not wound up and liquidated, and the company was, as is alleged in the petition, insolvent, it was the duty of the subscribers to pay the money due for stock to somebody for the benefit of the company’s creditors. This was a duty which the court could enforce in a case properly brought before it.
 

 “The question is, in whom was the right to bring this suit? It was not in the creditors, Barnard Brothers, until they had put their claim in judgment and exhausted their remedies at law. The allegation of the latter fact was necessary to complete their right of action, and therefore there appears a defect in the title to the suit. The court was empowered, in furtherance of justice, to amend the proceedings by adding or striking out the name of any party, or by doing both. Section 11363, General Code. This it did by substituting the name of the party entitled for the name of the party not entitled. This was right.
 
 L. S. & M. S. Ry. Co.
 
 v.
 
 Elyria,
 
 69 Ohio St., 414;
 
 McDonald
 
 v.
 
 Nebraska,
 
 101 Fed. Rep., 171.”
 

 Whether the substitution of a party plaintiff, having capacity to bring the suit, in the stead of the original plaintiff who filed the action without capacity to bring
 
 *647
 
 the suit, is a change in the original cause of action depends entirely upon the allegations in the amended petition. 'The mere substitution of parties plaintiff, without substantial or material changes from the claims of the original petition, does not of itself constitute setting forth a new cause of action in the amended petition. As was said in the opinion in the case of
 
 Van Camp
 
 v.
 
 McCulley, Trustee, supra:
 
 “The mere change of the name of the plaintiff in the title would not of course change the cause of action.”
 

 In the instant case the cause of action set up in the petition is in no way affected by the corrections contained in the amendment. The amendment corrects the allegations of the petition with respect ¡to plaintiff’s capacity to sue and relates to the right of action as contradistinguished from the cause of action. A right of action is remedial, while a cause of action is substantive, and an amendment of the former does not affect the substance of the latter. See 1 Bouvier’s Law Dictionary (Rawles Rev.), 295; Pomeroy’s Code Remedies (5 Ed.), 526
 
 et seq.,
 
 Section 346
 
 et seq.;
 
 1 Cyc., 642. An amendment which does not substantially change the cause of action may be made even after the statute of limitations has run.
 

 The requirement of the wrongful death statute that the prosecution of the action be in the name of the personal representative is no part of the cause of action itself, but relates merely to the right of action or remedy. That requirement was obviously intended for the benefit and protection of the surviving spouse, children and next of kin of a decedent, the real parties in interest. The personal representative is only a nominal party.
 
 Wolf, Admr.,
 
 v.
 
 Lake Erie & W. Ry. Co.,
 
 55 Ohio St., 517, 45 N. E., 708, 36 L. R. A., 812. Nor does the statute require that the personal representative shall bring the action
 
 (Wolf, Admr.,
 
 v.
 
 Lake Erie & W. Ry. Co., supra),
 
 but merely provides that the action, if brought, shall be brought in the name of the
 
 *648
 
 personal representative. The only concern defendants have is that the action be brought in the name of the party authorized so that they may not again be haled into court to answer for the same wrong.
 

 We hold that where a widow institutes an action as administratrix, for damages for the wrongful death of her husband, under the mistaken belief that she had been duly appointed and had qualified as such, thereafter discovers her error and amends her petition so as to show that she was appointed administratrix after the expiration of the statute of limitation applicable to such action, the amended petition will relate back to the date of the filing of the petition, and the action will be deemed commenced within the time limited by statute.
 

 The next question presented is whether decedent was guilty of contributory negligence as a matter of law in pouring what he purchased as, and believed to be, fuel oil upon the fire in the stove, the oil in fact being a mixture of fuel oil and gasoline or naphtha.
 

 The record discloses that the oil which the defendants sold to decedent as fuel oil consisted, to a large degree, of gasoline or naphtha; that fuel oil has a flash point of not less than 100°; that such oil does not become volatile at room temperature, and when poured on a flame vaporizes slowly so- that the burning becomes progressive but not explosive; that an explosion is not likely to take place inside the stove but rather inside the container which holds the
 
 oil;
 
 and that it is customary in starting fires with fuel oil to pour it on the flame directly, this method being safe because it does not permit collection of vapors and resulting flashes.
 

 A chemist, called as an expert witness by plaintiff, was asked:
 

 “Q. Now, if you poured a, we will say, fuel oil on to an open flame, and assuming that the fuel oil was standing in a room during the day with a temperature
 
 *649
 
 between 60 and 75 degrees, and it is.standing in an oil can, and there is a piece of paper and kindling pnt in the fire and you light, and you then take this can of fuel oil with the flash point that you have described being from 100 up to 150, and you poured that on a blazing fire in a stove would you get an explosion? A. No, I don’t think you would.”
 

 He explained his above answer by saying:
 

 “Well, you see the flash point must be really clearly understood to understand things of that kind. The flash point is the temperature, when you heat one of these materials, at which it .will give off enough vapors to make an explosive mixture. So that, when he tells me the material had a flash point of 100 and that it is standing in a room that is 75,1 know that it can’t make the necessary vapors to cause an explosion. Now, then, when it is poured on the fire, of course it gets hotter but as soon as it gets hot with the flame right there, the vapors which are formed burn, so that you get a progressive burning; you wouldn’t get an explosion there.”
 

 He was asked: “Now, assuming also you had a more volatile fluid than fuel oil, one with a low flash point, a flash point of 60 or below, and that has been standing in a room where the temperature is 60 or above, in an oil can, what happens inside of that oil can?”
 

 He answered: “That oil can gets filled with explosive vapors, because if — bearing in mind the flash point he is talking about at that temperature, that material gives off these vapors and fills the can. Then, if the can has some air in it, you have all the conditions necessary for a violent explosion if you ignite it.”
 

 Lay witnesses testified that on many occasions they had poured fuel oil on an open fire without occasioning an explosion. Plaintiff testified that decedent had often kindled fires in the same manner he did at the time of the accident, without producing an explosion.
 

 
 *650
 
 In -passing upon the motion for a directed verdict, the court should not pass upon the credibility of the witnesses or weigh the evidence. On the contrary, the court must, for the purpose of such motion, treat thé evidence as true and interpret it in a light most favorable to the plaintiff. Thus- considering and interpreting the evidence as contained in the record, can it be .said that different minds could reasonably arrive at different conclusions therefrom with respect to the question of decedent’s negligence? We find nothing in the record which would warrant a negative answer. The record discloses evidence which tends to show that the act of pouring fuel oil from containers upon live fires does not usually result in explosion. This evidence has some probative value as tending to show that under certain conditions and circumstances a fire may be made in the manner made by decedent without producing an explosion. Whether, under the conditions disclosed, it was negligence for decedent to pour what he believed to be fuel oil upon an open fire, is a question of ultimate fact for the jury. To hold that, without regard to surrounding circumstances and conditions, the pouring of what is believed to be fuel oil upon an open fire in a stove is contributory negligence as a matter of law, when the evidence discloses that the fluid was not fuel oil but a mixture of fuel oil with gasoline or naphtha, would be to protect the careless seller at the expense of the innocent purchaser.
 

 . Decedent had a right to believe that he bought fuel oil, the product he came to purchase and for which he asked. To argue that decedent was guilty of contributory negligence as a matter of law in pouring fuel oil upon an open fire when as a matter of fact, through the negligence of defendants, and unbeknown to decedent, he was pouring a product more volatile, more explosive and more dangerous than fuel oil, is to argue an absurdity.
 

 Passing upon a similar question, it was said in
 
 *651
 

 Dronette
 
 v.
 
 Meaux Bros.,
 
 156 La., 239, at page 242, 100 So., 411:
 

 “The plaintiff bought from defendant kerosene. The defendant delivered gasoline instead. The application of the gasoline to the coals of fire produced the flame which caused the explosion of the glass tank resting on the plaintiff’s knee. The delivery of the gasoline instead of the kerosene was the moving cause and the explosion was directly traceable to the negilgence and carelessness of the defendant. There was no intervening cause.
 

 “"We hardly think it logical, and it is contrary to every day observation and experience, to say that the explosion would have happened any way, if the plaintiff had poured kerosene on the coals instead of gasoline. There was no contributory negligence in the act of the plaintiff in pouring the liquid on the coals believing it to be kerosene.”
 

 The evidence disclosed in the record requires determination of the factual question whether fuel oil can be safely used in starting a fire in the method employed by decedent and whether the explosion was due solely to the presence of gasoline or naphtha in the fuel oil. Clearly, these are question of fact for the jury to consider under proper instructions from the court. See
 
 Houston Oil Co.
 
 v.
 
 McGuire,
 
 187 Ark., 293, and
 
 Ellis, Admr.,
 
 v.
 
 Republic Oil Co.,
 
 133 la., 11, 110 N. W., 20.
 

 We hold that in a wrongful death action based on negligence in selling fuel oil mixed with gasoline or naphtha, the purchaser, having asked for fuel oil, is not to be deemed guilty of contributory negligence as a matter of law in pouring such oil upon a fire in a stove, believing it to be fuel oil.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Williams, Myers, Matthias and Hart, JJ., concur.