OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Ramsey, Appellant, v. Neiman et al., Appellees.
[Cite as Ramsey v. Neiman (1994),     Ohio St.3d.    .]
Courts -- Cause of action for wrongful death arising under R.C.
     Chapter 2125.
     (No. 93-626 -- Submitted March 1, 1994 -- Decided June 29,
1994.)
     Appeal from the Court of Appeals for Summit County, No.
15786.
     Carrie Hartney and her two children, Pamela and Benjamin,
died in a house fire on June 16, 1989.  At the time of the fire
Hartney was renting the house from its owner, appellee Robert
Neiman.  Hartney's father, appellant Donald Ramsey, filed a
wrongful death action against Neiman and the city of Akron on
June 17, 1991, the day on which the two-year limitation for
bringing the action was due to expire.  See R.C. 2125.02(D).
     Ramsey claimed in the complaint to be the personal
representative and the duly appointed administrator of the
estates of Hartney and her children.  Ramsey, however,
misstated his status in at least one respect.  He was not the
administrator when he filed the complaint, and at no time since
did he apply to the probate court to be administrator.
     Neiman and the city of Akron filed motions for summary
judgment on the basis that Ramsey lacked standing to bring the
wrongful death action.  He lacked standing, they argued,
because he had not been appointed by a court to be the
decedents' personal representative.
     The court of common pleas granted both motions.  The court
held that "a wrongful death action cannot be maintained by or
in the name of a relative of the deceased or any other person
who is not the duly appointed and authorized administrator,
executor, or other court appointed representative of the
decedent's estate."
     The court of appeals affirmed.
     The cause is now before this court pursuant to the
allowance of a motion to certify the record.

     Scanlon & Henretta, Lawrence J. Scanlon and James P.
Hanratty, for appellant.

Ulmer & Berne, Harold H. Reader, Roberto H. Rodrigues, Jr. and Thomas R. Kelly, for appellee Robert Neiman.

Max Rothal, Akron Director of Law, and Laura A. Killian, Assistant Director of Law, for appellee city of Akron.

Wright, J.    The question presented is whether a wrongful death action may be brought under R.C. Chapter 2125 by a person who has not been appointed by a court to be the decedent's personal representative.  We answer the question in the negative and affirm the judgment of the court of appeals.

I

The answer to the question presented in this case depends on the meaning of the phrase "personal representative" in R.C. 2125.02(A)(1).  The applicable language of R.C. 2125.02(A)(1) has remained virtually unchanged since the date the statute was originally enacted in 1851.  When first enacted, the statute provided:  "Sec. 2.  Every such action shall be brought by and in the name of the personal representatives of such deceased persons ***."  (Emphasis added.)  49 Ohio Laws 117.  The current version states: "[a]n action for wrongful death shall be brought in the name of the personal representative of the decedent ***."  (Emphasis added.)  Because the language pertinent to the present case has not changed since 1851, we may determine the meaning of "personal representative" by examining the definition of the phrase when the statute was first enacted.

During the latter part of the nineteenth century the phrase "personal representative" meant "executor" or "administrator."  At least three American law dictionaries in use around this time and one treatise on the law of torts defined the phrase in this manner.  Volume 2 of the 1876 edition of Bouvier's Law Dictionary at 327 defines "personal representatives" as "the executors or administrators of the person deceased."  Volume 2 of the 1879 edition of Abbot's Law Dictionary at 274 defines the phrase as follows:  "[It] means the executor or administrator, and does not include the widow. *** It means executors or administrators, and not heirs or devisees of land."  The 1893 edition of Kinney's Law Dictionary and Glossary at 522 defines the phrase to mean only "executors or administrators."  Finally, the editor of a treatise on torts, commenting on the meaning of the phrase "personal representative" in various wrongful death statutes, says, "It is, however, important to note that the term 'personal representative' employed in these statutes, means the executor or administrator of the deceased, and not his next of kin."  Pollock on Torts (Webb Ed.1894) 81 (citing cases).

When a word or phrase is not defined in a statute it is fair to assume that the legislature meant for the word or phrase to be given its ordinary meaning.  As a result, we can conclude that in 1851 the General Assembly intended the phrase "personal representative" to include only executors and administrators, for that seems to have been the accepted definition of the phrase.  And during that time period -- like today -- a person could not become an executor or administrator until a probate court appointed the person as such.  See Swan, A Manual for Executors and Administrators in the Settlement of the Estates of Deceased Persons: With Practical Forms, Etc. (4

Ed. 1855) 1.  The inference is clear.  The 1851 General Assembly understood (and therefore intended) that the person bringing the wrongful death action would be appointed by a probate court.

Our conclusion in this regard is supported by the language of England's Lord Campbell's Act (Fatal Accidents Act, 1846), which formed the basis for Ohio's wrongful death statute.  Lord Campbell's Act, passed by Parliament in 1846 to abrogate the common-law rule that no action could be maintained against a person who wrongfully caused the death of another, permitted only executors or administrators to bring the new cause of action in wrongful death.  The Act provided in pertinent part:

"II. And be it enacted, That every such Action shall be for the Benefit of the Wife, Husband, Parent, and Child of the Person whose Death shall have been so caused, and shall be brought by and in the Name of the Executor or Administrator of the Person deceased ***."  (Emphasis added.)  9 & 10 Vict. Ch. 93, 86 Eng. Stat. at Large 531 (see, also, Speiser, Recovery for Wrongful Death [2 Ed. 1975] 643, Appendix A).

The language quoted above was the model, in part, for Ohio's wrongful death statute.  There is no evidence, historical or otherwise, that the 1851 General Assembly intended to modify the Act in any substantive way by employing the phrase "personal representative" instead of the words "Executor or Administrator."  If the General Assembly had intended such a change, it certainly would not have attempted to accomplish the change by using a phrase that at the time was, in effect, synonomous with those words.  We can therefore conclude that the General Assembly intended to follow the Act insofar as it required an executor or administrator, i.e., an individual appointed by a court, to bring the cause of action.

Subsequent amendments to the wrongful death statute also support the conclusion reached above, because the amendments refer to the personal representative as a court-appointed person.  R.C. 2125.02(C) requires the personal representative to be appointed before settlement of the case.  R.C. 2125.02(C) states in part:

"A personal representative appointed in this state, with the consent of the court making the appointment ***, may settle with the defendant the amount to be paid."  (Emphasis added.).

Former R.C. 2125.03(A) refers to the personal representative as if he or she had been appointed whether or not the case was settled.  R.C. 2125.03(A) (now renumbered [A][1]), stated:

"The amount received by a personal representative in an action for wrongful death ***, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them.  The court that appointed the personal representative shall, except when all of the beneficiaries are on an equal degree of cosanguinity to the deceased person, adjust the share of each beneficiary in such manner as is equitable ***."  (Emphasis added.)

Because only persons appointed by a court are authorized by R.C. 2125.02(C) to settle a wrongful death action, an anomalous situation would result if a person not so appointed was permitted to bring the action.  Such a person could presumably dismiss the action or reduce it to judgment subject

only to the constraint that he or she not breach the fiduciary duty owed to the beneficiaries.  The non-appointed person, however, could not settle the action unless he or she first became appointed by a court to be the decedent's personal representative, a requirement that would inevitably delay -- to the possible detriment of the beneficiaries -- the settlement proceedings.

In addition, good policy reasons exist for requiring, as a condition precedent to the maintenance of a wrongful death action, that the person bringing the action be appointed by a court.  Such a requirement eliminates the possibility that the defendant will face more than one lawsuit.  It also allows for potential conflicts of interest to be revealed in advance of the filing of the action.  And it ensures to some degree that the wrongful death action will be brought by a person who will act in the best interests of the beneficiaries, the real parties in interest.

Appellant nevertheless asks us to define him, the father and grandfather of the deceased, as the personal representative even though he was not appointed to be the decedents' personal representative, he was not appointed to be the administrator of their estates, and he has never applied to be appointed to either capacity.  Appellant does not, however, explain how the text or history of the wrongful death statute allows us to do so in the absence of a court appointment.  In the absence of a court appointment, appellant can only be defined as the next of kin of the decedents.  And, unlike the wrongful death statutes in some states, Ohio's wrongful death statute does not define "personal representative" according to familial relationships.1

To grant appellant's request to define him as the personal representative of his daughter and grandchildren would require us to rewrite the statute, and that we cannot do.  Instead, we heed the advice of Justice Frankfurter, who said: "A judge must not rewrite a statute, neither to enlarge nor to contract it.  Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and eviscertion.  He must not read in by way of creation.  He must not read out except to avoid patent nonsense or internal contradiction."  Frankfurter, Some Reflections on the Reading of Statutes (1947), 47 Colum. L. Rev. 527, 533.

Given the history surrounding the enactment of Ohio's original wrongful death statute and considering the subsequently enacted provisions in the statute, we hold as follows: A cause of action in wrongful death arising under R.C. Chapter 2125 must be brought in the name of a person appointed by a court to be the administrator, executor, or personal representative of the decedent's estate.

II

Appellant also argues that if he is appointed by a court to be the decedents' personal representative and amends his petition to reflect the appointment, the amendment should relate back to the date he filed the complaint.  Appellant cites two cases to support his argument, Kyes v. Penn. Rd. Co. (1952), 158 Ohio St. 362, 49 O.O. 239, 109 N.E.2d 503, and Douglas v. Daniel Bros. Coal Co. (1939), 135 Ohio St. 641, 15 O.O. 12, 22 N.E.2d 195.

In Kyes, an ancillary administrator was appointed in Ohio before the time limit for bringing a wrongful death action had expired. The administrator's appointment was later vacated after the time limit expired, and a new administrator was substituted as the plaintiff. The court in Kyes held that the substitution was permissible because the cause of action remained unchanged and the administrator was only a nominal plaintiff and not the real party in interest.

In Douglas, the plaintiff filed a wrongful death action under the mistaken belief that she had been appointed administrator of the decedent's estate. She later discovered her mistake and corrected it by seeking and obtaining a court appointment to be administrator. The court in Douglas allowed her amended petition to relate back to the date of the filing of the complaint because "the cause of action set up in the petition [was] in no way affected by the corrections contained in the amendment." Douglas, supra, at 647, 15 O.O. at 15, 22 N.E.2d at 198.

The facts in Kyes or Douglas are not analogous to the facts of the instant case. Kyes addressed the substitution of one appointed plaintiff for another; Douglas involved a plaintiff who mistakenly believed she had been appointed administrator and who later became appointed. Again we note that appellant has not been appointed administrator, nor does the record show any attempt on his part to become appointed.

Moreover, we cannot decide the question whether appellant's appointment will relate back to the date he filed his complaint because the question is based on an assumed set of facts. The question, therefore, cannot be the result of any claimed error in the courts below, and "*** [a]ppeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant." Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm. (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus. We therefore decline to hold that appellant's future appointment as personal representative of the decedents' estates -- should such an appointment ever occur -- will relate back to the date he filed his complaint.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

                              Judgment affirmed.

Moyer, C.J., and A.W. Sweeney, J., concur.

Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur in judgment only.

FOOTNOTE:

1 The wrongful death statutes of some states allow family members to bring suit. See, e.g., Ariz. Rev. Stat. Ann. Section 12-612(A) ("An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person ***. Either parent may maintain the action for death of a child ***.") (Emphasis added.); and N.D. Cent. Code Section 32-21-03 ("The action shall be brought by the following persons in the order named: 1. The surviving husband or wife, if any. 2. The surviving children, if any. 3. The surviving mother or father. 4. The personal representative.") (Emphasis added.)

Pfeifer, J., concurring in judgment only.    I agree with the lead opinion's conclusion that R.C. 2125.02(C) mandates that a personal representative in a wrongful death case be appointed by a court before the case is settled. That is what the statute expressly requires.

I do not agree with the lead opinion's conclusion that R.C. 2125.02(A)(1) mandates that the personal representative be appointed before he or she can enter the courthouse to file a wrongful death complaint.  That is not what the statute expressly requires.

Grief-stricken families spend significant periods of time deliberating whether a wrongful death action should be brought on behalf of a deceased loved one.  These lengthy deliberations often result in a wrongful death complaint being filed at the last minute.

A relative who finally decides to file a wrongful death complaint must not be obligated to first go through the lengthy process of obtaining a court appointment before filing the complaint.  This delay would unnecessarily jeopardize a personal representative's chances of filing the complaint within the two-year limitations period.

The language in R.C. 2125.02(A)(2) and 2125.02(C) indicates that the personal representative must be court-appointed after the complaint has been filed, but before any judgment is entered or any settlement is reached.

Summary judgment would provide the appropriate mechanism to screen out those plaintiffs who have not received court appointment after filing their complaints.  In the present case, the plaintiff was not appointed as the decedents' personal representative after he filed his complaint.  Thus, the trial court correctly granted defendants' motions for summary judgment, but for the wrong reason.

Douglas, Resnick and F.E. Sweeney, JJ., concur in the foregoing concurring opinion