GIBSON, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

[Cite as *Gibson v. State Farm Mut. Auto. Ins. Co.* (1997), 123 Ohio App.3d 216.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95 CA 107.

Decided Aug. 22, 1997.

*Paul D. Malina Co., L.P.A., Teresa C. Mlicki* and *Paul D. Malina,* for appellant.

*Schwer, Taggart, Wehler, Emerich, Winks & Peifer, William Winks* and *Quinton R. Dressel,* for appellee.

FREDERICK N. YOUNG, Presiding Judge.

Plaintiff-appellant Sandra Gibson appeals from a summary judgment rendered in the Clark County Court of Common Pleas in favor of defendant–appellee State Farm Mutual Automobile Insurance Company ("State Farm").

I

The following facts are undisputed. On October 28, 1992, Fred Jagger, Gibson's father, was struck by a motor vehicle operated by Sandra Ehrman. Fred Jagger, who suffered serious injuries requiring surgery and hospitalization, died on January 15, 1993. The decedent was survived by his spouse, Beatrice Jagger, and by his two adult daughters, Barbara Mack and Gibson. Beatrice Jagger subsequently died.

At the time of the accident, Ehrman was covered under a liability insurance policy issued by GRE Insurance Group with a single-limit liability of $100,000. Mack, as executor of the estate of Fred Jagger, accepted $100,000 in full settlement of the decedent's personal injury and wrongful death claims. Mack released Ehrman and GRE Insurance Group from any and all further liability for any such claims. Of this sum, $10,000 was paid to settle the wrongful death claim to be distributed to Fred Jagger's beneficiaries, of which Gibson received $5,000. The wrongful death settlement was approved by the Clark County Probate Court on August 10, 1993.

At the time of the accident, Gibson was insured under a policy of automobile insurance issued by State Farm ("the policy"), which provided for underinsured motorist coverage with limits of $100,000 per person/$300,000 per accident. Gibson notified State Farm on February 7, 1994 of the accident and her intent to present an underinsured motorist claim. State Farm rejected the claim on the grounds that the settlement with and release of the tortfeasor constituted a material breach of the policy.

On May 9, 1994, Gibson filed a complaint against State Farm. Gibson's complaint sought a declaration that her policy afforded underinsured motorist coverage for the harm she suffered as a result of her father's death. On September 14, 1995, the trial court filed a judgment entry sustaining State Farm's motion for summary judgment. The trial court determined that Gibson was not entitled to underinsured motorist coverage under her own automobile liability insurance policy because Gibson materially breached the terms of the policy when she failed to notify State Farm of the proposed settlement and release of the tortfeasor. The trial court also found that the settlement failed to exhaust the tortfeasor's available liability insurance limits, which bars Gibson's recovery of underinsured motorist benefits. On this basis, the trial court granted State Farm's motion for summary judgment and denied Gibson's cross-motion for summary judgment. Gibson timely filed her notice of appeal on October 13, 1995. Neither the tortfeasor nor her insurance company is a party to this action.

II

Gibson raises the two following assignments of error:

"I. The trial court erred to the prejudice of plaintiff–appellant in granting defendant–appellee's motion for summary judgment.

"II. The trial court erred to the prejudice of plaintiff–appellant in failing to sustain plaintiff–appellant's cross–motion for summary judgment."

The assignments of error are related and we will address them concurrently.

Pursuant to Ohio's wrongful death statute, R.C. 2125.01 *et seq.*, and Ohio's uninsured motorist statute, R.C. 3937.18, Gibson submitted a claim for underinsured motorist coverage under her automobile insurance policy issued by State Farm. State Farm was granted summary judgment by the trial court.

Summary judgment is a question of law; thus, our standard of review is *de novo*. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597. We must determine whether State Farm, as the moving party, has sustained its burden by establishing that there is no issue of material fact. *Id.* State Farm is entitled to summary judgment only if it can establish, through evidentiary material permitted by Civ. R. 56(C), that there is no genuine issue of material fact, that it is entitled to judgment as a matter of law, and that it appears from the evidence before the trial court that reasonable minds could come to but one conclusion and that conclusion is adverse to Gibson, the nonmoving party, who is entitled to have the evidence construed most strongly in her favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Gibson's motion for summary judgment is likewise governed by the same standard.

Three grounds of contention exist between the parties. State Farm contends that Gibson is not entitled to underinsured motorist benefits under the policy because (1) Gibson did not obtain State Farm's consent to settle with the tortfeasor as set forth in the policy, (2) Gibson is not legally entitled to recover damages due to the settlement negotiations with the tortfeasor, and (3) the available liability limits of the tortfeasor's policy were not exhausted as required by the policy. We will address each contention separately.

■■■ Both parties concede that all wrongful deaths in Ohio are controlled by R.C. 2125.01 *et seq.* R.C. 2125.01 provides in pertinent part: "[I]f the death of a person is caused by a wrongful act, neglect, or default that would have entitled the injured person to maintain a civil action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * is liable in damages in an action for wrongful death under this chapter, notwithstanding the death of the injured person * * *." The personal representative of the decedent is the sole person authorized to pursue the beneficiaries' claims against the tortfeasor and against any applicable underinsurance of the decedent. R.C. 2125.02. Additionally, both parties agree that Gibson cannot independently sue the tortfeasor and that, according to R.C. 2125.02(C), a personal representative alone may settle with the defendant. *Tennant v. State Farm Mut. Ins. Co.* (1991), 81 Ohio App.3d 20, 24, 610 N.E.2d 437, 439.

■■■ Both parties also concede that R.C. 3937.18 provides that automobile insurance carriers must offer uninsured and underinsured motorist coverage to

their policy holders. Moreover, in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, the Ohio Supreme Court held that an underinsurance claim must be paid when an individual covered by an underinsurance policy suffers damages in excess of the limits of the tortfeasor's liability insurance coverage. Paragraph three of the syllabus. *Savoie* has been legislatively overruled by S.B. No. 20, which became effective October 20, 1994. We have held, however, that this legislation is not retroactive, and, thus, *Savoie* applies in the present case. *Back v. Am. States Ins. Co.* (Nov. 1, 1995), Montgomery App. No. 15195, unreported, 1995 WL 643121; *Hapner v. Grange Mut. Cas. Co.* (June 23, 1995), Montgomery App. No. 14510, unreported, 1995 WL 371069.

## A

We must first decide whether the trial court erred in finding that State Farm was entitled to judgment as a matter of law regarding Gibson's contractual obligation to obtain consent from State Farm before the settling of the claim against the tortfeasor by Mack. Specifically, the issue is whether an insurer is entitled to judgment as a matter of law when a beneficiary in a wrongful death action seeks underinsurance compensation provided for in her own policy after the personal representative of the decedent has settled the wrongful death claim and released the tortfeasor from further liability without the consent of the beneficiary's insurance company.

Gibson presents two arguments. Gibson first contends that she did not breach the explicit terms of the advance notification and consent to settle provisions of the State Farm policy because she did not negotiate the settlement with the tortfeasor and did not execute a release in the tortfeasor's favor. Gibson next contends that the policy conflicts with R.C. 3937.18 and, therefore, is invalid.

## I

With regard to her first argument, Gibson contends that the specific language in the policy prevents State Farm from denying her request. The policy states the following in pertinent part:

"THERE IS NO COVERAGE:

"1. FOR ANY *INSURED* WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*."

The "insured" is defined as:

"*Insured*—means the *person* or *persons* covered by uninsured motor vehicle coverage. This is:

"1. the first *person* named in the declarations;

"2. his or her *spouse;*

"3. their *relatives;* and

"4. any other *person* while *occupying:*

"a. *your car,* a *temporary substitute car,* a *newly acquired car* or a trailer attached to such *car.* Such vehicle has to be used within the scope of the consent of *you* or *your spouse;* or ·

"b. a *car* not owned by *you, your spouse* or any other *relative,* or such other *person* or a trailer attached to such a *car.* It has to be driven by the first *person* named in the declarations or that *person's spouse* and within the scope of the owner's consent."

As used in the above section, "relative" is defined in the policy as follows:

*"Relative—* \* \* \* means a *person* related to *you* or *your spouse* by blood, marriage or adoption (including a ward or foster child) who lives with *you.* It includes *your* unmarried and unemancipated child away at school \* \* \*."

In this case, Mack, as executor of the estate of Fred Jagger, settled the wrongful death claim with the tortfeasor and executed an appropriate release. Thus, Gibson argues that because her personal representative or her husband is not the "insured" under Gibson's policy, there was no breach of the settlement notification and consent provisions in question.

State Farm maintains that Gibson breached the policy when she failed to notify State Farm and receive its consent to settle in accordance with the language in the policy. State Farm cites *Love v. Nationwide Mut. Ins. Co.* (1995), 104 Ohio App.3d 804, 663 N.E.2d 407, for the proposition that a settlement by a personal representative bars the beneficiary from underinsurance coverage on her own policy. See, also, *Weiker v. Motorists Mut. Ins. Co.* (Aug. 16, 1996), Ottawa App. No. OT–96–012, unreported, 1996 WL 464166. Gibson distinguishes *Love* on the ground that the policy in *Love* contained a specific provision excluding coverage when an "insured" or an "insured's legal representative" accepts a settlement without the insurer's consent. The policy at issue in this case refers only to the insured.

We agree with Gibson's reading of *Love* and further note that the other two cases cited by State Farm in furtherance of its position are distinguishable. In the cases of *Hopping v. Erie Ins. Co.* (Mar. 20, 1990), Clark App. No. 2649, unreported, 1990 WL 31832, and *Tennant, supra,* this court and the Ninth District Court of Appeals held that a release given by a personal representative binds the beneficiaries. However, the specific language of the policies is not given, and, as such, they cannot fairly be read to support State Farm's position.

We decline to glean from these cases the blanket proposition that settlement by an insured's legal representation automatically disentitles the insured to underinsurance coverage irrespective of the actual terms of the contract.

Even if we were to find that the clause in Gibson's policy is ambiguous, we would follow *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Id.* and syllabus. In light of *King*, we are inclined to agree with Gibson's interpretation of the provision.

ii

Nevertheless, we need not decide this issue because we find that the provision, whether applied to legal representatives or strictly to the insured, is invalid. We agree with Gibson's argument that an insurance policy provision that requires an insured to obtain the consent of the insurer to a proposed settlement with a tortfeasor before underinsurance benefits are available under the policy is in conflict with R.C. 3937.18 and Ohio case law.

We are mindful that Ohio law has long recognized the validity and enforceability of advance notification and consent clauses as a precondition to provide uninsured or underinsured motorist coverage. See *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447; *Ruby v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730; *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456.

The Supreme Court has held that "a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage." *McDonald*, 45 Ohio St.3d at 29, 543 N.E.2d at 459; quoting *Bogan, supra,* at paragraph four of the syllabus. Subrogation rights have been limited in that an insurer that received notice of a pending settlement and has a reasonable opportunity to protect its subrogation rights would not be able to use the subrogation clause to bar payment of underinsurance benefits. *McDonald*, 45 Ohio St.3d at 31, 543 N.E.2d at 460. However, before the insured has notified the insurer of the settlement offer, the insured is the only party in the position to protect or destroy the underinsured's subrogation rights. *Id.* Therefore, an insured who settles with and releases an underinsured tortfeasor before giving her insurer notice is precluded from bringing an action against her insurer for underinsured motorist benefits. *Id.* As stated in the *McDonald* case,

"an insured who destroys his insurer's subrogation rights without the insurer's knowledge does so at his peril." *Id.*

■ Requiring notice to be given to the insurer affords the insurer a reasonable opportunity to protect its subrogation rights by evaluating such factors as those listed in *McDonald, supra:* the amount of the settlement, the amount of liability insurance remaining, the amount of assets held by the tortfeasor, the likelihood of recovery via subrogation, and the expenses and risks of litigating the insured's cause of action. After considering these factors, the insurer may decide simply to permit the settlement and release, to pay the underinsured motorist benefits before the release is given, or to substitute its payment to the insured in an amount equal to the proposed settlement and pursue the tortfeasor personally. *Id.* Regardless of the probable success of the use of its subrogation rights, the insurer can require its consent as a precondition to providing underinsurance benefits. *Back, supra.*

While notice and consent provisions are generally valid and enforceable preconditions to underinsured motorist coverage, we find that the notice and consent provision is unenforceable in the present case pursuant to R.C. 3937.18 and R.C. 2125.01 *et seq.* In reaching this decision, we carefully reviewed the policies behind R.C. 3937.18, R.C. 2125.01 *et seq.,* and subrogation clauses.

The intent of Ohio's uninsured motorist statute, R.C. 3937.18, "is to provide uninsured and underinsured motorist coverage for injured persons who have a legal cause of action against a tortfeasor but who are uncompensated because the tortfeasor is either (1) not covered by liability insurance or (2) covered in an amount that is less than the insured's uninsured motorist coverage." *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 400, 583 N.E.2d 309, 312. Moreover, the statute attempts to place insureds in the same position they would have been had the tortfeasors possessed liability coverage. *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 113, 623 N.E.2d 1197, 1199, citing *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 62 O.O.2d 406, 294 N.E.2d 665.

■ R.C. 3937.18 is remedial legislation and it must be construed in order to effectuate the legislative purpose. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440, citing *Curran v. State Auto. Mut. Ins. Co.* (1971), 25 Ohio St.2d 33, 54 O.O.2d 166, 266 N.E.2d 566. We recognize the basic tenet that the purpose of uninsured motorist coverage and its mandatory offering is "to protect persons from losses, which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." *Martin,* 70 Ohio St.3d at 480, 639 N.E.2d at 440. The validity of an insurance policy exclusion of uninsured coverage depends on whether it conforms to R.C. 3937.18. *Id.*

■ It is clear from Ohio's wrongful death statute, R.C. 2125.02, that Gibson had a right to recover damages suffered by reason of wrongful death, even though the action must be brought in the name of the personal representative of the decedent. *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 89, 526 N.E.2d 1089, 1092. According to R.C. 2125.02(C), a personal representative may exclusively settle with the defendant an amount to be paid. *Tennant,* 81 Ohio App.3d at 24, 610 N.E.2d at 439, citing *Matz v. Erie-Lackawanna RR. Co.* (1965), 2 Ohio App.2d 136, 31 O.O.2d 241, 207 N.E.2d 250. The personal representative does not need the consent of the beneficiaries prior to the settlement. *In re Estate of English* (Aug. 16, 1989), Champaign App. No. 89–CA–05, unreported, 1989 WL 94544. Any settlement is then distributed to the next of kin as provided by the probate court. Thus, at no time does the personal representative need to communicate with the beneficiaries in settling the wrongful death claim.

The Supreme Court has discussed the benefits of having a personal representative in a wrongful death action. *Ramsey v. Neiman* (1994), 69 Ohio St.3d 508, 511, 634 N.E.2d 211, 213. First, this requirement eliminates the possibility that the defendant will face more than one lawsuit. *Id.* Second, it allows for potential conflicts of interest to be revealed in advance of the filing of the action. *Id.* Third, it ensures to some degree that the wrongful death action will be brought by a person who will act in the best interests of the beneficiaries, the real parties in interest. *Id.*

■ The purpose of R.C. 3937.18 is to protect injured persons. The purpose of R.C. 2125.01 *et seq.* is to create an efficient and practical procedure for wrongful death actions. The purpose of notification and consent provisions are to allow the injured person to consult with the insurance company prior to a settlement in order to protect the insurer's subrogation rights. However, these principles conflict. R.C. 3937.18 states that Gibson has a right to recover underinsured motorist coverage because she is an injured person. R.C. 2125.01 states that Gibson must recover from the tortfeasor through her personal representative. Ohio law states that the insurer's subrogation rights should be protected.

■ However, Gibson never had the power to protect State Farm's subrogation rights. She never had the power to prevent a settlement. Gibson was never an insured who destroyed her insurer's subrogation rights without the insurer's knowledge because Mack, as the personal representative, settled with the tortfeasor. Thus, in this circumstance the notification and consent provisions are not reasonable preconditions to coverage.

It could be argued that at no time was Gibson able to get State Farm's consent prior to the settlement because she may not have had notice of it. Even

assuming that she did know about the settlement, she had no authority to stop or control any aspect of the settlement because the personal representative does not need the permission of the beneficiaries to settle.

 Accordingly, we hold that an automobile liability insurance policy provision which eliminates underinsured motorist coverage for persons insured thereunder who are injured under Ohio's wrongful death statute, but are not the personal representative, violates R.C. 3937.18 and is therefore invalid. Although State Farm was denied an opportunity to assert a claim against the tortfeasor, the wrongful death statute provides for only one person (the personal representative) to settle the wrongful death claim. Thus, as so much as the policy conflicts with R.C. 2125.01 *et seq.,* and R.C. 3937.18, State Farm loses its right to subrogation. In essence State Farm's provision is an attempt to change Ohio's tort law, by contractual definition, in order to circumvent its duty to provide uninsured and underinsured motorist coverage pursuant to R.C. 3937.18. This it cannot do.

If we were to hold otherwise, personal representatives may be forced to endure trials to prevent beneficiaries from losing their uninsured/underinsured motorist coverage. This would be against public policy, as settlements are a favored remedy.

"There are of course a number of considerations which militate in favor of settlement between the underinsured tortfeasor's insurer and the injured party. Obviously, settlement avoids litigation with its attendant expenses and resultant burden upon the legal system. Where the amount of settlement is less than the policy limit, the unpaid amount may well represent the savings in litigation costs for both sides. More importantly, settlement hastens the payment to the injured party who obviously needs compensation soon after the injuries when the medical expenses begin to amass and when the anxiety level is probably quite high. Additionally, there are many situations where litigation would not be a preferred course of action because, while the injuries are certain, there remain other problems of proof. Thus, the public policy considerations, apart from the contract of the parties, generally favor settlements." *Bogan,* 36 Ohio St.3d at 25–26, 521 N.E.2d at 451.

Thus, we find that we should not construe the law against settlements.

State Farm makes another argument that while it is true that Gibson did not participate in the settlement, her counsel was in attendance. Gibson's counsel also represented Mack in the settlement. We believe that Gibson is correct when she states that her knowledge is irrelevant because she could never have effectuated or prohibited a settlement from the tortfeasor in this case.

Thus, even assuming that the language in the policy implicitly included the words "personal representative," we find that the notification and consent provision conflicts with relevant Ohio law.

State Farm also attempts to deny coverage based on the following provision:

"If the *insured* and the *person* or the organization legally liable for the *insured's bodily injury* reach a settlement agreement to pay the *insured* such *person's* limits of liability, the *insured* must submit the agreement to us in writing for our approval prior to final execution of such settlement agreement if:

"a. the settlement would not fully satisfy the *insured's* claim for *bodily injury;* and

"b. an uninsured motor vehicle claim has been made or will be made against us."

We find that this provision does not exclusively ask for notification, but rather for notification and consent based upon the wording "for our approval." As such, for the same reasons elucidated above, we find that State Farm's argument is without merit. However, if the provision were strictly a notification provision, we might be inclined to hold differently. In a case where the insured clearly knew about a settlement and failed to notify her insurance company pursuant to a clearly written exclusive notification provision, we might hold that she breached her contract. This is because although the insurer may not have power to prevent a settlement, the insurer may be able to influence the personal representative not to settle and protect its rights. For example, the insurer may offer the personal representative an equal or greater amount of money than that of the tortfeasor's insurance company. Moreover, the insurance company may view the situation differently than does the personal representative. The personal representative may want to acquire funds to pay those who have been damaged or may not perceive the tortfeasor as having more than the policy in his possession. The insurance company has the funding to pursue a trial or may wait longer to recover damages from the tortfeasor or the tortfeasor's insurance company. Therefore, in a case where the policy calls for separate notification of a pending settlement and the insured clearly is aware of the settlement, we might be inclined to hold that the insured has an obligation to notify the insurer.

We find that the trial court erred in finding that State Farm was entitled to judgment as a matter of law on this issue.

### B

We must now decide whether Gibson is legally entitled to recover damages as required by the policy. Specifically, the issue is whether a beneficiary in a wrongful death action is barred from seeking underinsurance compensation

provided for in her own policy after the personal representative of the decedent has settled the wrongful death claim and released the tortfeasor because she is no longer legally entitled to recover.

Gibson maintains that at her father's death she became "legally entitled to recover damages" from the tortfeasor, and, as such, she had a contractual right against State Farm. State Farm responds that the release of the tortfeasor by the personal representative, Mack, bars Gibson from being legally entitled to recover damages at the time her claim was presented to State Farm. State Farm relies upon *Love, supra,* where the court stated that legal entitlement to recover damages terminates with the settlement and release because it was premised on the wrongful death action. See, also, *Weiker, supra.* The *Love* court relied upon *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 581 N.E.2d 533, which held that one's status as "legally entitled to recover" is dependent on the uninsured's legal liability to pay. Specifically, *Love* held "that any rights * * * [the insureds] may have had under their policies as a result of wrongful death of their parents terminated with the settlement of the wrongful death claims and the subsequent release of the tortfeasor." *Love, supra.* State Farm maintains that because of the settlement the tortfeasor is no longer liable to pay damages and that Gibson is no longer legally entitled to recover damages from the tortfeasor.

Underinsured and uninsured motorist coverage are mandatory under R.C. 3937.18(A), but the statute does not prevent an insurer from requiring the insured to be "legally entitled to recover damages" as a condition precedent to receiving benefits under the terms of the policy. *Ohio Farmers Ins. Co. v. Binegar* (Jan. 07, 1994), Montgomery App. No. 13906, unreported, 1994 WL 3619. "Legally entitled to recover damages is reasonably susceptible [of] at least two interpretations: (1) that the insured's legal entitlement to recover damages against the tortfeasor is a condition of the *accrual* of a claim under the policy; or (2) [that] the insured's legal entitlement to recover damages against the tortfeasor is a condition of the *assertion* of a claim under the policy." *Id.* Moreover, we have found that the insurer does not necessarily take the place of the tortfeasor.

In addition, when terms of an insurance contract are reasonably susceptible of more than one interpretation, they will be strictly construed against the insurer and in favor of the insured. *Ohio Farmers Ins. Co., supra,* citing *King, supra.* The purpose of the underinsured motorist coverage statute is to "provide protection for insureds * * * where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage." R.C. 3937.18(A)(2).

The policy in question requires that the insured be entitled to collect damages from the driver or owner of the uninsured motor vehicle. In this regard, the Supreme Court has held that if a person is among those listed in R.C. 2125.01(A) that person is legally entitled to recover under the uninsured/underinsured motorist coverage provision in her policy. *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555.

We find that Gibson's argument is persuasive. According to R.C. 2125.01, Gibson is presumed to have been damaged by her father's death. At the time of her father's death, Gibson became legally entitled to recover under her State Farm policy. Gibson, however, would not know whether it would be necessary to recover under the policy until the personal representative, Mack, settled with the tortfeasor or until after a trial. *Kurent, supra,* is distinguishable on the premise that the tortfeasor was never under a legal duty to pay damages. In *Kurent, supra,* an Ohio motorist was involved in an accident in Michigan with a Michigan resident. Michigan is a no-fault insurance jurisdiction and, therefore, the Ohio motorist was never entitled to recover.

We must also point out that if we were to agree with the *Love* court, a beneficiary of a wrongful death claim would never be able to recover underinsured motorist coverage when the personal representative settled with the tortfeasor. As such, the beneficiaries would be powerless and may lose their right to underinsured motorist coverage. We agree with Gibson's argument that all underinsured motorist claims involve a situation where the tortfeasor has been released and the insured is now pursuing benefits under her own policy. This is because all insurance policies have a condition precedent that the insured exhaust the liability limits of the tortfeasor's policy before she can recover underinsured motorist benefits. Thus, all insureds would be barred after exhausting the tortfeasor's policy and, therefore, one must look to the accrual of the claim when determining whether one is legally entitled to recover damages.

Moreover, beneficiaries in a wrongful death action are each entitled to a separate per-person limit of coverage under an uninsured policy. *Sparks v. State Farm Mut. Auto. Ins. Co.* (Oct. 24, 1995), Franklin App. No. 95APE03–339, unreported, 1995 WL 632081 (Tyack, J., dissenting), citing *Savoie, supra,* at paragraph four of the syllabus. The Supreme Court has recognized that R.C. 2125.02(A)(1) created separate rights of recovery. *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 557, 668 N.E.2d 913, 916. If *Love* were allowed to stand, the "separate claims" as contemplated by *Savoie* would be extinguished by the personal representative to the detriment of the beneficiaries that the laws are designed to protect. See *Sparks, supra,* dissent.

■ As such, we find that a beneficiary in a wrongful death action is legally entitled to recover underinsured motorist coverage after a settlement by the personal representative. Thus, the trial court erred in finding that State Farm was entitled to judgment as a matter of law on this issue.

The Supreme Court has set out four requirements for R.C. 3937.18 that Gibson must meet in order to come within the meaning of R.C. 3937.18. *Sexton*, 69 Ohio St.2d at 433–435, 23 O.O.3d at 387–388, 433 N.E.2d at 558–559. The *Sexton* case dealt with uninsured motorist coverage; however, Ohio courts have extended the *Sexton* case's reasoning and holding to underinsured motorist coverage issues. *Alexander, supra.*

The first requirement is that there be an insured. *Id.* Gibson meets this qualification, for she is the owner of the policy and the named insured.

The second requirement is that the insured be legally entitled to recover damages sustained because of injury or death caused by an uninsured or underinsured motorist. *Id.* In a footnote in *Sexton* the court stated: "Pursuant to R.C. 3937.18, the insured's right to recover loss depends on his legal right to recover damages." See, also, *United Services Auto. Assn. v. Mack* (May 17, 1995), Clark App. No. 94–CA–32, unreported, 1995 WL 301437. As stated, Gibson is legally entitled to recover underinsured motorist coverage only after she establishes that the tortfeasor was under a legal duty to pay damages. The settlement specifically stated that all claims are "denied and disputed." Therefore, Gibson must establish a wrongful death action.

■ "To maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454. Although Gibson contends that the issue of causation is not properly before the court, Civ. R. 56(C) provides for the trial court and this court to examine the pleadings. In State Farm's answer and counterclaim for declaratory judgment, State Farm claims that causation is at issue. From the evidence, we find that there is a genuine issue of material fact as to whether Ehrman proximately caused Fred Jagger's death. As such, summary judgment is precluded.

The third statutory requirement is that damages result from injury, sickness, disease, or death. *Id.* If the above element can be shown at trial, Gibson will be presumed to have been damaged by her father's death. Last, the tortfeasor must be the owner or operator of an uninsured or underinsured motor vehicle. *Id.* Ehrman was the operator of the vehicle that struck Fred Jagger.

Upon consideration of the foregoing, this court finds that genuine issues of material fact exist pursuant to whether the death of Gibson's father was proximately caused by Ehrman. Thus, the trial court properly overruled Gibson's motion for summary judgment.

## C

Both parties concede that the GRE Insurance Group policy was exhausted by the personal representative, Mack. Thus, a discussion on this issue is not necessary.

Gibson's first assignment of error having been sustained and the second assignment of error having been overruled, we reverse the judgment of the trial court, and this cause will be remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FAIN, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

I respectfully dissent from the decision of the majority sustaining the first assignment of error, which I would overrule.

R.C. 3937.18(A)(2) requires insurers to provide underinsured motorist coverage to their automobile liability policyholders "where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident." The extent of the coverage that the insurer must provide is an amount equal to the insured's own liability coverage. *Id.* The policy that plaintiff-appellant Gibson purchased from defendant-appellee State Farm requires it to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured (underinsured) motor vehicle" to the extent of the policy's coverage of the insured's own liability.

The obligation imposed on an insurer by R.C. 3937.18(A)(2) accrues when an occurrence takes place which gives rise to the tortfeasor's potential liability to the insured. The insurer's obligation to pay an amount pursuant to that provision terminates when the tortfeasor is determined not to be liable to the insured, or when the amount for which the tortfeasor is determined to be liable is equal to or less than the insured's own liability coverage. This latter alternative occurs when

a judgment is rendered in such an amount or when the insured releases the tortfeasor from liability in exchange for a payment of money in such an amount.

Pursuant to R.C. 2125.02, an action for wrongful death must be brought in the name of the decedent's personal representative and is brought for the benefit of the surviving spouse, the children, and parents of the decedent. *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089. The personal representative is but a nominal party to an action for wrongful death; the designated beneficiaries for whom the action is brought are the real parties in interest. *Gibson v. Solomon* (1939), 136 Ohio St. 101, 23 N.E.2d 996. Each beneficiary is entitled to recover from his own underinsured coverage for any loss sustained in excess of his proportionate share of the proceeds from a wrongful death claim. *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555; *Derr v. Westfield Cos.* (1992), 63 Ohio St.3d 537, 589 N.E.2d 1278.

Though the personal representative is but a nominal party, any judgment rendered for the beneficiaries on a wrongful death claim must be in favor of the personal representative, in that capacity. The power to settle with a defendant in a wrongful death action is exclusively in the personal representative, who acts on behalf of all interested persons. *Tennant v. State Farm Mut. Ins. Co.* (1991), 81 Ohio App.3d 20, 610 N.E.2d 437. Settlement by the personal representative is binding on the beneficiaries of a wrongful death claim, and it bars any further prosecution of that claim by them in their individual capacities. *Id.*

The personal representative is appointed by the probate court of the county in which the decedent resided at the time of death. If the personal representative receives an offer of settlement from the defendant in a wrongful death case, the personal representative must apply to the probate court to approve the proffered settlement and for an order to distribute the proceeds paid. Unless otherwise agreed by the beneficiaries, distribution of wrongful death proceeds must conform to the statute of decent and distribution. R.C. 2125.03. When the beneficiaries agree to a different distribution, a form of consent to the proposed distribution executed by each of them must be filed in the probate court by the personal representative. The particular form employed for that purpose is Standard Probate Form 14.2.

In support of its motion for summary judgment, defendant-appellee State Farm presented a certified copy of a Standard Probate Form 14.2 that Barbara Mack filed in the Probate Court of Clark County on August 10, 1993, asking to distribute the proceeds of $100,000 offered by Sandra Ehrman's insurer in settlement of the wrongful death claim arising from the death of Fred Jagger. Because Jagger's beneficiaries would receive less than the shares to which each was entitled by law, each beneficiary executed a consent to the distribution proposed. The form indicates that Sandra Gibson agreed to accept $5,000 from the proceeds received by the personal representative in settlement of her

wrongful death claim. State Farm also filed a certified copy of an order that the probate court entered on August 10, 1993, approving the settlement and distribution.

It is undisputed that the settlement approved by the probate court is complete. Because the settlement cuts off Ehrman's liability to Gibson, she is no longer "legally entitled to collect" damages from Ehrman on account of her father's death. That fact operates as a condition subsequent that terminates any prior duty imposed on State Farm by its contract with Gibson to provide underinsured coverage for the losses that Gibson suffered as a result of her father's death. Therefore, the trial court did not err when it granted summary judgment to State Farm on Gibson's claim. Accord *Love v. Nationwide Mut. Ins. Co.* (1995), 104 Ohio App.3d 804, 663 N.E.2d 407; *Weiker v. Motorists Mut. Ins. Co.* (Aug. 16, 1996), Ottowa App. No. OT–96–012, unreported, 1996 WL 464166.

Judge Young has suggested that a settlement between the personal representative and the tortfeasor should not be binding on a beneficiary because the beneficiary is not a party to the settlement cutting off the tortfeasor's liability to him and because the existence and extent of the beneficiaries' underinsured loss cannot be known until the settlement is reached. I am not unsympathetic to that view. However, as the facts of this case demonstrate, a beneficiary is not necessarily unaware of the prospect of settlement or unable to object to it in the probate proceeding in a manner that will protect his interests. Any greater protections must, in my view, be afforded by the legislative branch, not judicially engrafted into a claim for relief that is wholly statutory or an obligation that is a creation of contract.

I would affirm the judgment of the trial court on the foregoing basis.