OPINION
On July 16, 1995, George McClain was killed in a motorcycle accident caused by the negligence of John Pollock. Approximately two years after the accident, Pollock's liability carrier settled with McClain's estate for its policy limits of $12,500. At that time, McClain's estate released Pollock and his carrier from all liability for the accident.
At the time of the accident, George McClain resided with his brother, Gerald Stewart McClain, who was employed with Twist, Inc. Twist, Inc. carried two insurance policies with Cincinnati Insurance Company ("CIC"), a basic commercial policy which included auto liability and uninsured/underinsured motorist coverage and an umbrella policy containing similar types of coverage. On April 28, 2000, almost five years after the accident, the estate filed a claim with each of these policies seeking underinsured motorist coverage for George McClain's death.
In response to those claims, CIC filed a declaratory action to determine whether the policies should provide coverage for the 1995 loss. Following summary judgment motions from both parties, the trial court concluded that no coverage should be provided to the estate because it did not comply with the notice provision of the basic commercial policy, destroying CIC's subrogation rights against the tortfeasor. The estate has appealed this decision, raising the following assignments of error:
 The trial court erred to the prejudice of defendant-appellant in granting plaintiff-appellee's motion for summary judgment and in overruling defendant-appellant's motion for summary judgment because the applicable policy language contains an ambiguity as to the insured's duty to notify plaintiff-appellee of a policy limits settlement with the insurer of an underinsured motorist tortfeasor, which ambiguity should have been resolved in favor of defendant-appellant.
 The trial court erred in granting plaintiff-appellee's motion for summary judgment and in overruling defendant-appellant's motion for summary judgment because the settlement between defendant-appellant and the liability insurer for the tortfeasor John Pollock did not prejudice the rights of plaintiff-appellee the Cincinnati Insurance Company under the policy issued to its insured Twist, Inc.
 The trial court erred in granting summary judgment in favor of plaintiff-appellee because it failed to consider the claims of defendant-appellant pursuant to the uninsured/underinsured motorist coverage which exists by operation of law in the commercial umbrella liability policy issued by plaintiff-appellee to Twist, Inc.
 The trial court erred in granting plaintiff-appellee's motion for summary judgment and in overruling defendant-appellant's motion for summary judgment because decedent's minor daughter had a valid claim for underinsured motorist coverage pursuant to the policies issued by plaintiff-appellee to Twist, Inc., and did not receive any compensation from the tortfeasor.
This case arrives in our court as a result of summary judgment. An appellate court's review of a summary judgment decision is de novo.Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 10, citing Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ.R. 56, the same as a trial court. According to Civ.R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 I, II
The estate's first and second assignments of error both involve coverage under the basic commercial policy. For ease of discussion, we will address these assignments of error together.
All provisions of the basic commercial policy that are at issue in these assignments of error are contained in the uninsured motorist endorsement of the policy. Specifically, there are three provisions discussed by the parties. The first is under "Section A. Coverage" and states as follows:
 We will pay under this coverage only if a. or b. below applies:
 The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or
 A tentative settlement has been made between an "insured" and the insurer of the vehicle described in paragraph b. of the definition of "uninsured motor vehicle" and we:
 Have been given prompt written notice of such settlement; and
 Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.
The estate argues that, because this requirement is in the disjunctive, as long as either "a" or "b" applies, uninsured/underinsured motorist coverage applies to the loss. We agree. The "Coverage" section simply sets the parameters for what types of losses are covered under this endorsement. Because "a" applies in this situation, the estate's claim is covered under this section. However, the inquiry cannot end there.
Next, the estate argues that consent to settle its claim with the tortfeasor's insurer was not required as a prerequisite to coverage under CIC's policy. Again, we agree. Section C, entitled "Exclusions," describes four types of losses for which there is no coverage. These situations are explicitly excluded from coverage under the policy. Specifically, the section contains the following relevant language:
This insurance does not apply to:
 Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in paragraph F.3.b. of the definition of "uninsured vehicle."
Paragraph F.3.b. defines an underinsured vehicle as "a motor vehicle for which the sum of all liability bonds or policies * * * [is] less than the limits of this insurance." Pursuant to this subsection, settlement with the insurer of an underinsured vehicle would be an exception to the exclusion. In other words, consent is not required prior to settlement with an underinsured tortfeasor. Therefore, in this case, the estate was not required to obtain CIC's consent prior to settling with Pollock's insurance carrier. Consequently, the loss sustained by the estate is not specifically excluded from coverage due to lack of consent. Again, our inquiry cannot end there.
Section E entitled "Changes in Conditions" lists the duties and conditions which are required of an insured in the uninsured motorist endorsement. The language pertinent to this appeal is as follows:
 DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
* * *
 A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of "uninsured motor vehicle."
The foregoing should be considered together with the language in the "Conditions" section of the main policy which requires "prompt notice" of any loss. We interpret these sections to require that an insured who desires to file an uninsured or underinsured motorist claim promptly notify CIC in writing prior to finalizing settlement with the tortfeasor or his insurer.
The estate argues that the language in the notice provision is so similar to the consent provision, it creates an ambiguity. This argument is supported by the Tenth District case of Howard v. State Auto Mut.Ins. Co. (Mar. 13, 2000), Franklin App. No. 99AP-577, unreported. InHoward, as in the present case, the Howards settled with the tortfeasor's insurer, releasing both the tortfeasor and her insurer from all liability. Thereafter, the Howards filed a claim with American Select Insurance and State Auto Mutual Insurance to collect underinsured motorist benefits.
As to the Howards' case against State Auto, the Tenth District quoted language from the policy virtually identical to the language quoted above in the Coverage and Exclusions sections of the CIC policy. After reviewing the language in both of those sections, the Howard court determined that it created ambiguity and therefore ruled in favor of the Howards. Id. at pp. 4-5. As stated above, if we were only to consider the Coverage and Exclusions sections of the CIC policy, we too would find that coverage should be afforded. Because the relevant part of the Coverage section is disjunctive, the policy affords underinsured motorist coverage when "[t]he limits of any applicable liability bonds or policies have been exhausted by judgments or payments." Further, as we found above, the Exclusions section does not require consent prior to settlement with an underinsured tortfeasor in order to afford underinsured motorist coverage. Because the Howard court does not quote any notification language from the State Auto policy, we have no conflict with that portion of the decision.
Moving onto the Howards' case against American Select, the Howard court quoted policy language identical to the above-quoted language in the Exclusions and Notice provisions of CIC's policy. After examining the language of these two sections, the Tenth District found that even though one section deals with consent and the other with notification, "the provisions are nonetheless so contradictory with respect to consent and notification as to confuse the most savvy insured." Id. at p. 3. We disagree.
In reading the policy, an insured would encounter Section C. "Exclusions" and discover that failure to obtain consent prior to settling a claim with an underinsured tortfeasor does not exclude
coverage under the policy. However, if the insured would continue to read the policy, he would also encounter Section E. "Changes in Conditions," and ascertain his duties in the event of a loss. This section does not require the insured to obtain consent prior to settling the loss in order for coverage to be provided, but does impose a duty upon the insured to notify the insurance company prior to finalizing any settlement with a tortfeasor if the insured intends to seek underinsured motorist coverage. Stated differently, the insured does not need to await permission from CIC to settle, but does need to inform the insurance company that a tentative settlement has been reached to allow CIC to take whatever action it wishes to take. See McDonald v. Republic-FranklinIns. Co. (1989), 45 Ohio St.3d 27, 31-32 (explaining the options of the insurance company once notified of a tentative settlement with the tortfeasor).
Moreover, the character of the "consent" provision and the "notice" provision is entirely different. If consent were required under the policy and not obtained, no coverage would exist under the policy. On the other hand, the notification provision establishes a duty for the insured. If the duty is breached, further inquiry is required to determine whether coverage should be precluded under the policy. Contrary to the estate's contentions, this policy specifies that the duty of notification is imposed upon the insured in order to protect CIC's subrogation rights against the tortfeasor. After all, prior to notifying the underinsured carrier, the insured is the only person who can preserve those rights for the insurance company. McDonald, supra, at 31. While we agree that CIC's policy could have been written more clearly, we do not find that the policy provisions are ambiguous.
The supreme court has held that a requirement of "prompt" notification in an insurance policy "requires notice within a reasonable time in light of all the surrounding facts and circumstances." Ruby v. MidwesternIndem. Co. (1988), 40 Ohio St.3d 159, syllabus. Usually, the question of whether the notice condition of a policy has been satisfied is a question for the jury; however, "an unexcused significant delay may be unreasonable as a matter of law." Ormet Primary Aluminum Corp. v.Employers Ins. of Wausau (2000), 88 Ohio St.3d 292, 300. If delay is unreasonable, prejudice to the insurance company may be presumed absent evidence to the contrary. Ruby, supra, at 161. It is then the insured's burden to present evidence to rebut the presumption of prejudice.Ferrando v. Auto-Owners Mut. Ins. Co. (Sept. 4, 2001), Ashtabula App. No. 2000-A-0038, unreported, at p. 4 (citations omitted).
Several cases have found significant delays to be unreasonable and presumptively prejudicial. See, e.g., Fillhart v. W. Res. Mut. Ins. Co. (1996), 115 Ohio App.3d 200, 204 (holding that five-year delay was presumptively prejudicial and precluded recovery); West American Ins. Co.v. Hardin (1989), 59 Ohio App.3d 71, 74 (finding eight-year delay violated notice provision and precluded coverage); Ferrando, supra
(finding no coverage when insured failed to comply with provision requiring notice before releasing tortfeasor from liability). Because the estate failed to file a claim with CIC until nearly five years after the accident with no reasonable excuse for the delay[1], we find that prejudice can be presumed. Furthermore, we find that CIC also suffered actual prejudice as a result of the estate's actions.
First, we recognize that the right of subrogation has been granted to uninsured/underinsured motorist providers by the General Assembly pursuant to R.C. 3937.18(E). Consequently, a subrogation clause in an uninsured motorist policy is a valid precondition to the insurance company's duty to provide coverage. Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22, 29, overruled on other grounds, McDonald v.Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27. Moreover, "[i]t is well-settled in Ohio that by executing a release which precludes an insurer from exercising its subrogation rights an insured materially breaches his insurance contract and discharges his insurer from its obligation to provide coverage." Ruby, supra, at 162. In this case, the estate executed a release which precluded CIC from exercising its subrogation rights against the tortfeasor. As a result, CIC was not required to provide coverage under the policy.
The estate argues that the possibility of recovery under the subrogation clause in this case is nonexistent because Pollock is judgment-proof. Consequently, the estate contends that its execution of the release did not prejudice CIC. However, a subrogation right "is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor." Bogan, supra, at 31. Therefore, it is reasonable for the insurer to require that the insured not take any action to destroy its subrogation right against the tortfeasor, regardless of the likelihood of success of a subrogation claim. Id. It is therefore irrelevant that Pollock may have been judgment-proof, because executing the release destroyed CIC's subrogation right, thereby precluding coverage under the policy.
Furthermore, even if the estate did not sign the release, the delay in reporting the claim to CIC allowed the statute of limitations to expire for any claim CIC may have had against the tortfeasor or his insurer. This is an additional manner in which the estate has destroyed CIC's subrogation right by its delay.
Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of CIC finding that CIC was not required to provide coverage under its basic commercial policy. The estate's first and second assignments of error are overruled.
 III
The estate's third assignment of error addresses the underinsured motorist coverage available under the umbrella policy issued by CIC to Twist, Inc. It appears from the brief that the estate makes a few separate arguments under this assignment of error. First, the estate claims that the trial court erred by not specifically considering coverage under this policy in its summary judgment decision. After reviewing the decision, we agree that the trial court did not make a conclusion about coverage under the umbrella policy. However, the trial court did characterize its decision as a final appealable order, indicating that all issues in the case were resolved by the decision. Because our review is de novo and the analysis supporting the trial court's decision regarding the basic policy is similar to the analysis involving the umbrella policy, we will address coverage under the umbrella policy in the interest of judicial economy.
The estate also mentions in its brief that CIC may not have provided them with all relevant policy language based on a notation in the umbrella policy declarations page mentioning both a commercial general liability policy and an automobile liability policy. Unfortunately, the estate did not raise this discovery issue with the trial court. We need not address errors raised on appeal which were not raised in the trial court. Merillat v. Bd. of Cty. Commr's of Fulton Cty. (1991),73 Ohio App.3d 459, 463, citing State, ex rel. Specht, v. Bd. of Edn. (1981), 66 Ohio St.2d 178. Therefore, we decline to address this allegation.
The main argument in this assignment of error alleges that the estate was entitled to underinsured motorist coverage under the umbrella policy. The estate spends some time arguing that uninsured/underinsured motorist coverage should be implied by law. However, we do not dispute that the umbrella policy would provide underinsured motorist coverage for McClain's death if the conditions of the policy were met.
Similar to the basic policy, the umbrella policy required notice of a loss "as soon as practicable." While this language is slightly different than "prompt notice," it means virtually the same thing. See Ormet,supra, at 303 (finding that language requiring notice "as soon as practicable" requires notice "within a reasonable time under the circumstances of the case"). As we found with the basic policy, the five-year delay in providing notice in this case was an unexcused significant delay which was unreasonable as a matter of law. See, Ruby,supra. Additionally, as we found with the basic policy, the estate has destroyed CIC's subrogation rights by failing to notify the company prior to releasing the tortfeasor and prior to expiration of the statute of limitations.
Furthermore, specific language in the umbrella policy precludes coverage for this loss. The "Excess Uninsured Motorist Coverage Endorsement" contains the following language:
 This coverage applies in excess of and only to the extent insurance is provided by the Basic Polices as scheduled in the Declarations and subject to all its conditions and limitations * * *.
Based on this section, because we found no coverage under the basic policy, no coverage can be provided under the umbrella policy. See Duriakv. Globe American Cas. Co. (1986), 28 Ohio St.3d 70, 72, overruled on other grounds, Miller v. Progressive Cas. Ins. Co. (1994),69 Ohio St.3d 619, 620 (finding that because the plaintiff had failed to comply with the condition precedent to the primary policy, the uninsured/underinsured motorist coverage under the excess policy was unavailable to plaintiff).
Accordingly, we find that coverage should not be provided under the umbrella policy and the estate's third assignment of error is overruled.
 IV
In its fourth assignment of error, the estate argues that Miriah McClain, George's daughter, did not sign the release of the tortfeasor, and therefore, has an independent claim against the insurance company. We disagree.
The estate relies on Weiker v. Motorists Mut. Ins. Co. (1998),82 Ohio St.3d 182 and Gibson v. State Farm Mut. Auto. Ins. Co. (1997),123 Ohio App.3d 216 to support its contention. The facts of those cases are similar to each other, but different from the case at bar. In both cases, there was a wrongful death which was settled by the administrator or executor of the decedent's estate. In Weiker, the sister of the decedent, who was uninvolved with the settlement, brought a claim against her own insurance carrier for underinsured motorist benefits since she received no part of the wrongful death settlement. Weiker, supra, at 183. Similarly, in Gibson, the decedent's daughter, also uninvolved in reaching or agreeing to the settlement, but who received a small part it, also filed a claim with her underinsured carrier. Gibson, supra, at 219. In addition, in both cases, the individuals who settled the wrongful death claims were not insureds under the underinsured policies which Weiker and Gibson were claiming against. Both courts found that because Weiker and Gibson did not reach the settlement with the tortfeasor, they did not violate any notice or consent provisions of the underinsured motorist policies and therefore, they were afforded coverage.
This case can easily be distinguished. While Miriah apparently did not sign the settlement with Pollock's carrier for the $12,500 settlement, her mother did. Setting aside for the moment that Miriah is a minor and Amanda is her guardian, Miriah is also a statutory beneficiary of the wrongful death claim on behalf of her father. The supreme court has held that because statutory beneficiaries of a wrongful death action are the real parties in interest, they are also bound by any release signed by the representative of the estate. Burwell v. Maynard (1970),21 Ohio St.2d 108, 110-111 (citations omitted). Therefore, Miriah is bound by the release Amanda signed releasing Pollock's carrier which precluded coverage under the CIC policies.
Further distinguishing the present case from Weiker and Gibson, not only were Amanda and Miriah both bound by the release of the tortfeasor, but also both were insureds under the CIC policies. In both Weiker andGibson, the individuals responsible for the releasing the tortfeasors were not insureds under the underinsured motorist policies Weiker and Gibson filed claims against. Unlike those cases, Miriah is inextricably involved in both the release and the policies, the same as her mother.
Assuming arguendo that Miriah was not bound by the release and could file a separate claim with the two policies, this does not change the fact that the loss was reported almost five years after it occurred. The statute of limitations has still expired precluding CIC's potential subrogation claims. As a result, Miriah is also precluded from coverage for failing to timely notify either CIC policy of the loss. Accordingly, the fourth assignment of error is overruled.
Judgment affirmed.
WOLFF, P.J., and FAIN, J., concur.
[1] The estate offered as one reason for the delay that it was unaware it could file a claim with CIC until after the supreme court decidedScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660 and its progeny which allowed employees and family members to be considered "insureds" and recover uninsured/underinsured motorist coverage under commercial liability policies. While we do not dispute thatScott-Pontzer can be retroactively applied since it did not create new law, we disagree that awaiting a favorable supreme court decision is a reasonable excuse for a five-year delay in filing a claim.